R.K. RAY SALES, INC., Plaintiff and Counterdefendant-Appellee, v. GENOVA, INC., Defendant and Counterplaintiff-Appellant.

Fourth District    No. 4—84—0619

Opinion filed May 8, 1985.

John K. Greanias, of Greanias & Booth, of Decatur, for appellant.

Jeff Justice, of Hull, Campbell & Robinson, of Decatur, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

The question of the extent of the remedies available to a principal when its sales agent violates the responsibilities of the agency lies at the heart of this case. The issue arises in the context of a suit brought by a sales agent against its principal for commissions for sales consummated. The principal has defended and counterclaimed on a theory that the agent was operating in violation of the terms of the agreement between the parties at the time the commissions were otherwise earned.

On August 30, 1983, plaintiff, R.K. Sales, Inc., filed suit in the circuit court of Macon County seeking to recover against defendant, Genova, Inc., for commissions to which it claimed entitlement for making sales for defendant, Genova, Inc., pursuant to a sales agency agreement. Defendant answered and counterclaimed, stating that plaintiff was not entitled to commissions for the period claimed as plaintiff had not fulfilled all of its duties to defendant and asking for a return of commissions it paid to plaintiff while plaintiff was making sales in breach of its obligations to defendant. A jury trial ensued. At the close of all of the evidence, the court directed a verdict in favor of plaintiff on defendant's counterclaim and allowed plaintiff's motion for a directed verdict on its complaint. On July 9, 1984, judgment was entered thereon in favor of plaintiff in the amount of $9,499.82. Defendant appeals.

Defendant does not dispute that plaintiff would be entitled to commissions in the full amount awarded if plaintiff had not been in breach of its duties to defendant at the time these commissions were otherwise earned. Rather, defendant maintains that (1) a jury question existed as to whether plaintiff had breached its duties as defendant's agent, (2) the unpaid commissions for which plaintiff was suing had been earned during the time of the alleged breach, and (3) defendant was entitled to a setoff for the amount of any such commissions requested and reimbursement for those previously paid.

Plaintiff contends that there was no proof that it was in violation of its duties to defendant and more emphatically asserts that even if it had failed its responsibilities, defendant's sole setoff would be for damages it was shown to have received. Plaintiff maintains that there was no proof of such damages.

The trial court agreed with plaintiff. It felt that fairness ordinarily prohibited a policy whereby an agent who made sales while in

breach of its agreement with its principal would be penalized by being denied the commissions. The court reasoned that in such a situation the principal would have that which, in effect, would be a double recovery because it would receive its usual share of the profit and, in addition, that sum which it would otherwise have to pay to the agent as a commission. According to the trial court, such remedy should only be available where the agent's breach was so egregious that it amounted to a tort. Here, plaintiff's conduct was deemed to be a mere contractual breach at most. Thus, the contractual remedy of actual damages was held to be the appropriate remedy, if any, for setoff. The court determined that the proof of any such damages failed and directed its verdicts accordingly.

Much of the evidence was undisputed. Plaintiff represented defendant as an independent sales agent under a written agreement and had done so for a number of years. Plaintiff was compensated for its services by way of commissions calculated as a percentage of the price of defendant's products sold in plaintiff's sales territory.

Subject to certain provisions of its agreement with defendant, plaintiff was permitted to also serve as sales agent for other manufacturers simultaneously with its service to defendant. The contract required plaintiff to keep defendant informed of the identity of other manufacturers it represented, warned plaintiff of the undesirability of representing a manufacturer whose products conflicted either directly or indirectly with defendant's products and permitted defendant, at its option, to terminate the agency if plaintiff took on such representation.

During the time that plaintiff represented defendant, it also began representing Bemis Manufacturing Company. Defendant and Bemis manufactured certain product lines in direct competition with each other, but plaintiff did not sell any products of Bemis which were in direct competition with the products that it sold for defendant.

In 1982, litigation was instigated by defendant against Bemis in regard to their competing product lines. In September 1982, defendant set about to notify all of its independent sales agents of the existence of the suit against Bemis. Written notification of the litigation was received by plaintiff. At the same time, defendant set about advising its sales agents that represented both Bemis and defendant that a choice would have to be made between the two companies, as defendant did not wish its agents to represent both parties to the litigation.

Rolland Ray, plaintiff's owner, testified that when he received a telephone call from Paul Thornton, director of sales for defendant,

asking him to make a choice between Bemis and defendant, he objected, stating that he did not see a conflict in representing both manufacturers. Ray stated, however, that plaintiff received larger commissions from defendant than from Bemis, so he told Thornton that he would be resigning as representative for Bemis. Plaintiff did, then, resign as Bemis' representative, effective October 31, 1982, and sent a copy of its resignation letter to Thornton as he had requested.

Ray further testified that he told Thornton that, due to common courtesy, plaintiff would assist Bemis in any way requested until Bemis had a new representative appointed. Donald Wilkens, sales manager for Bemis, testified that Ray told him that plaintiff would help out with any problems regarding defects or related problems after the resignation was in effect.

Plaintiff's contract with Bemis provided that plaintiff would receive commissions on products sold before its effective resignation date and delivered up to 90 days thereafter. Plaintiff, however, continued to receive commissions from Bemis more than 90 days after its resignation became effective. Ray testified that he knew the commissions were received and did not know why they were received. He further testified that he had intended to look into why these commission checks were received but that they were deposited by his bookkeeper before he had a chance to do so. Wilkens testified that these commission checks were sent to plaintiff due to an internal bookkeeping error at Bemis for which he was responsible. The erroneous commissions have not been repaid to Bemis.

By letter of May 2, 1983, defendant dismissed plaintiff as its sales representative because it believed that plaintiff was still representing Bemis in violation of its agreement with defendant not to do so. Defendant then refused to pay plaintiff its remaining commissions on products plaintiff sold after October 31, 1982, and prior to May 2, 1983, and for its commissions earned during the 30-day grace period thereafter. It is for these commissions that plaintiff has filed suit. Defendant's counterclaim seeks to recover the amount which it already paid in commissions to plaintiff during the time that plaintiff received post-termination commissions from Bemis.

■ Under these facts, a jury question existed, as defendant asserts, as to whether the plaintiff had breached its contract to defendant. A jury could choose to disbelieve the explanations given for the payment of commissions by Bemis to plaintiff after October 31, 1982. When taken with the testimony that these commissions were not returned to Bemis, a jury could determine that the commissions were being paid for sales made by plaintiff after its purported resignation.

A jury could further find from the evidence of conversations between Ray and Thornton that Ray had promised that plaintiff would not do this. The jury could also conclude that such a breach of the agreement by plaintiff was wilful. As we will explain, a determination that the breach was wilful would be very significant.

In a case such as this, Illinois seems to follow not simply the basic law of contract but the more specialized law governing the contractual relationship between an agent and its principal found in Restatement (Second) of Agency (1958). The case law on this subject is scarce, but it has long been recognized that an agent, who is by definition in a fiduciary relationship with his principal (*Stone v. Stone* (1950), 407 Ill. 66, 94 N.E.2d 855), is entitled to compensation only on a due and faithful performance of all his duties to his principal. (1 Ill. L. & Prac. *Agency* sec. 93 (1953).) This rule was followed in both *Steinmetz v. Kern* (1941), 375 Ill. 616, 32 N.E.2d 151, and *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 413 N.E.2d 1299. In both of these cases, the agents, as did the agent here, actually performed duties for their principal for which they would normally receive compensation but at the same time they were breaching their fiduciary duty of loyalty to their principal. In each instance the court found that an agent could not expect compensation in such an instance for the period of time in which the agent was disloyal.

The discussion by the court in *ABC* includes a discussion of Restatement (Second) of Agency sec. 456 (1958). This section provides:

"If a principal properly discharges an agent for breach of contract, or the agent wrongfully renounces the employment, the principal is subject to liability to pay to the agent, with a deduction for the loss caused the principal by the breach of contract:

(a) the agreed compensation for services properly rendered for which the compensation is apportioned in the contract, whether or not the agent's breach is wilful and deliberate; and

(b) the value, not exceeding the agreed ratable compensation, of services properly rendered for which the compensation is not apportioned if, but only if, the agent's breach is not wilful and deliberate."

Work is not properly performed when done during a period in which other aspects of the contract are being breached even if the agent's breach does no harm to the principal. (*Steinmetz v. Kern* (1941), 375 Ill. 616, 621, 32 N.E.2d 151, 154.) The *ABC* court cor-

rectly interpreted section 456 of the Restatement when it held that (1) an agent is entitled to payment only for work properly performed, (2) where the work of an agent is done during a period of wilful or deliberate breach, the agent is not entitled to compensation for the work, and (3) where the work of an agent is done partly during the time of such a breach and partly while the agent is in conformity to his duty to his principal, the agent cannot recover if the compensation cannot be apportioned between the two periods.

While the facts in the *ABC* case show actions on the part of agents which appear to be more egregious than those alleged of the plaintiff in this case, the same principles of law exist to govern the right of the plaintiff to receive commissions for work performed for defendant. Under the circumstances of this case, the plaintiff is not entitled to the claimed commissions if it is found to have breached its agreement with defendant in a wilful and deliberate manner. The services to be performed by plaintiff are not apportionable. The commissions are either earned in their entirety for each sale or they are not so earned.

The wilful and deliberate disloyal conduct of which defendant contends that plaintiff is guilty is a recognized breach of a contract creating a principal-agent relationship. See Restatement (Second) of Agency sec. 456, Comment (c) (1958).

We agree with defendant to the extent that if plaintiff were found to have been in wilful or deliberate breach of its obligations at the time the commissions in question were otherwise earned, the usual contract rule that the remedy for the breach would be to recover actual damages caused by the breach would not be applicable. Rather, the foregoing rules of the law of agency would be in force. The evidence here presented a factual question as to whether (1) plaintiff was in breach of its obligations to defendant at the time it otherwise earned the commissions in question, and (2) if so, the breach was wilful or deliberate. If both propositions were proved, defendant would have been entitled to relief by way of setoff or reimbursement for any commissions earned during the breach. The directions of the verdicts were error.

Accordingly, we reverse the judgment entered on the directed verdicts and remand for a new trial.

Reversed and remanded.

McCULLOUGH and TRAPP, JJ., concur.