MONOTRONICS CORPORATION *et al.*, Plaintiffs-Appellants, *v.* GARY D. BAYLOR, Indiv. and d/b/a Gary Baylor Co. and d/b/a Baylor Electronics, Defendant-Appellee.

Second District    No. 81-302

Opinion filed June 9, 1982.

John E. Juergensmeyer, of Juergensmeyer, Zimmerman, Smith & Leahy, of Elgin, for appellant.

Arthur Janura, of Tenney and Bentley, of Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Monotronics Corporation, a small closely held corporation and two principals of that corporation, John S. Archer and Howard L. Plante, brought suit in the circuit court of Du Page County against Gary D. Baylor, a third principal who had served as the corporation president. In their complaint for injunctive relief and monetary damages, plaintiffs alleged (1) that Baylor had breached his fiduciary duty to the corporation by engaging in a competing business; (2) that Baylor had used the services of Monotronics employees in the conduct of his competing business without reimbursing Monotronics; and, (3) that Baylor had misused and misappropriated corporate funds by paying himself unauthorized sales commissions and unearned overtime.

The case originally came before the circuit court on February 11, 1980, on a petition for a temporary restraining order to prevent Baylor from acting as president of Monotronics or from entering the premises of the corporation. The order was granted and further hearings set for February 21, 1980. The order was later dissolved and an injunction entered which mandated that Baylor be allowed to serve as president of Monotronics. On June 10, 1980, the parties entered into a stipulation concerning the issues to be determined by the court. These were:

"A. Whether or not plaintiffs were entitled to have returned the sums represented by two checks drawn by the defendant, Baylor, as sales commissions for the years [sic] 1978 in the amount of $5,074.18 and 1979 in the amount of $15,114.94 and other alleged sales commissions during 1978-1980.

B. A claim of plaintiffs that the defendant in violation of his fiduciary responsibility to the plaintiff corporation, personally sold

technical equipment to hospitals and other users, and in doing so, utilized the services of employees of the plaintiff corporation in assembling, distributing, and servicing said equipment without compensating the plaintiff corporation therefore.

C. Claims of plaintiffs that Gary D. Baylor paid overtime to himself in excess of time expended on matters involving the plaintiff corporation and paid himself for time spent on his individual and private business.

D. A counter-claim by defendant Baylor for his salary for the period February 11, 1980, to February 21, 1980, if any such sum is found to be due, in the sum of $1,000.

E. A counter-claim of defendant Baylor for attorney's fees in defense of the temporary injunction and the dissolution of the temporary restraining order of February 11, 1980 which, it has been agreed, shall not exceed $2,000."

The parties further agreed that any awards to Monotronics were to be subject to a one-third reduction in recognition of the defendant's ownership interest.

Following a bench trial, the court denied plaintiffs' claims regarding the overtime and commission payments; found that defendant had in fact breached his fiduciary duty to Monotronics by engaging in a competing business and entered judgment against him in the amount of $4,019, his gross profit realized from the competing venture; granted defendant's claim for $1,000 back salary and denied defendant's claim for attorney fees. On appeal, the plaintiffs raise four issues. These are: (1) whether the trial court properly calculated the damages awarded to plaintiffs as a result of Baylor's breach; (2) whether as a matter of law, the finding that defendant had breached his fiduciary duty necessitated forfeiture of all compensation owing defendant for the period of the breach; (3) whether the trial court's findings concerning the commission and overtime checks were against the manifest weight of the evidence; and (4) whether the plaintiffs were entitled to punitive damages in this case.

We were aided in our consideration of this case by the trial court's extensive memorandum of decision and findings of fact. Our review of the record reveals that these findings were in all regards accurate and fair.

I

■■ Plaintiffs contend that the trial court erred in entering a judgment which fixed damages for Baylor's breach of fiduciary duty in the amount of the gross profit Baylor realized as a result of his breach. The plaintiffs maintain that the Illinois Supreme Court's decision in *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 321 N.E.2d 1, *cert. denied* (1975), 420 U.S. 975, 43 L. Ed. 2d 655, 95 S. Ct. 1398, requires that damages for such a breach reflect

the amount of profits lost to the corporation. In *Vendo*, an employer brought suit against a former officer/director alleging a violation of fiduciary duty by virtue of that officer's efforts to develop a machine which would be competitive with the older, less satisfactory model produced by the plaintiff corporation. On appeal, it was the plaintiff corporation's position that damages should be granted in the amount of profits which it would have realized had it owned the newer machine. Defendant maintained that plaintiffs could recover only those lost profits attributable to the fact that the products made by plaintiffs had to compete with the newer machine. The supreme court adopted the former standard, noting the existence of two "limiting factors." (58 Ill. 2d 289, 310, 321 N.E.2d 1, 13.) First, the court stated that the loss of profits is not a matter ordinarily susceptible of highly detailed direct proof. Thus the court held, inferential proof should be admissible to establish the amount of damages. (See also *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 281 N.E.2d 323.) The second limiting factor noted by the court is that the assessment of damages by a trial court sitting without a jury will not be set aside unless it is manifestly erroneous. *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 311, 321 N.E.2d 1, 13; *Schatz v. Abbot Laboratories, Inc.* (1972), 51 Ill. 2d 143, 149, 281 N.E.2d 323, 326.

In this case we find that the ruling of the trial court was not manifestly erroneous, was supported by substantial evidence, and further, is in harmony with the ruling set forth in *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 321 N.E.2d 1, *cert. denied* (1975), 420 U.S. 975, 43 L. Ed. 2d 655, 95 S. Ct. 1398. Plaintiffs in their brief argue that the award made by the court should include, at minimum: (1) the amount of time defendant spent on his business while being paid by Monotronics; (2) the amount of time spent by Monotronics employees in defendant's business; (3) profits earned by defendant from his competing business; and, (4) sales lost to Monotronics as a result of defendant's competing business.

Little evidence was presented on these points by the plaintiffs at trial. The record indicates that at the time when plaintiffs claim injury due to the fact that defendant was not concentrating on Monotronics business, sales rose, principally due to the efforts of Baylor, 29% in 1978 and 34% in 1979. Evidence was also adduced which indicated that Baylor was the chief sales officer and that the other principals had historically devoted their energies to nonselling activities. Plaintiffs make no references to the record which established that they suffered damages in excess of the amount of the trial court's award. Further, the trial court noted that the witnesses presented by plaintiffs were long-time employees or relatives of the plaintiff principals and that their testimony indicated a fairly strong bias against and hostility toward Baylor.

■■ Determinations as to credibility or bias are matters well within the

purview of the trier of fact. (*Riemer Bros. v. Marlis Construction Co.* (1978), 64 Ill. App. 80, 380 N.E.2d 1160.) As estimate of profit loss by an interested witness does not constitute such evidence as will, alone, support a judgment for damages. (*Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616.) Here, the court relied upon what it apparently considered to be the less biased testimony of defendant's personal accountant, who was called by the plaintiffs and who testified over defendant's objection.

While the Illinois Supreme Court has been clear in its holdings that a judgment for lost profits may be supported by inference, no cases held that all possible inferences must be indulged, nor has the court done away with the requirement of evidence altogether. The record here indicates that the trial court had firm evidence before it which established the amount of the gross profit realized by the defendant and very little unbiased evidence as to the elements suggested by the plaintiffs.

## II

■■ Plaintiffs next contend that as a matter of law, the finding that defendant had breached his fiduciary duty must result in complete forfeiture of all compensation paid or owing to him for the time of the breach. Plaintiffs seek to have the court order disgorgement of all payments made to defendant during the period of the breach. Plaintiffs also challenge on these grounds, that portion of the trial court's order awarding $1,000 to defendant as salary for the 10-day period during which he was restrained by court order from acting as president of plaintiff corporation.

Plaintiffs rely principally upon *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 321 N.E.2d 1, *cert. denied* (1975), 420 U.S. 975, 43 L. Ed. 2d 655, 95 S. Ct. 1398, and *ABC Trans National Transport v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 413 N.E.2d 1299, for the proposition that as a matter of law the defendant must disgorge any and all compensation paid to him during the period of the breach of his fiduciary duty. Although an order dictating full forfeiture was affirmed in that case we find no such ruling in *Vendo*. Rather, in that case the supreme court rejected arguments that the existence of an employment contract precluded such relief and that forfeiture of salary in addition to an award of lost profits resulted in an improper double recovery.

In *ABC*, the appellate court did, as plaintiffs contend, overturn a trial court's attempt to "apportion" a forfeiture. In that case, the trial court ordered a defendant found to be in breach of his fiduciary duty to disgorge only one-third of the compensation paid him during the breach, in recognition of that portion of his services which were, in the court's opinion, "properly" rendered. (*ABC Trans National Transport v. Aero-*

*nautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 838, 413 N.E.2d 1299, 1314.) The appellate court modified the award and forced the defendant to pay back the full amount. The court held that:

"Under the law of this State it has long been recognized that 'an agent is entitled to compensation only on a due and faithful performance of all his duties to his principal.' (1 Ill. L. & Prac. *Agency* §93 (1953), citing, *e.g.*, *Steinmetz v. Kern* (1941), 375 Ill. 616, 32 N.E.2d 151.) In applying this rule 'it makes no difference whether the result of the agent's conduct is injurious to the principal or note, as the misconduct of the agent affects the contract from considerations of *public policy* rather than of injury to the principal.' (Emphasis added.) (*Steinmetz v. Kern* (1941), 375 Ill. 616, 621, 32 N.E.2d 151, 154; * * *)" (90 Ill. App. 3d 817, 837, 413 N.E.2d 1299; 1314-15.)

Plaintiffs place great weight upon this language.

We note several crucial factual distinctions between *ABC Trans National Transport v. Aeronautics Forwarders, Inc.*, and the case before us. In *ABC*, the evidence clearly established that the defendant had conspired to bring about a massive personnel walkout and customer defection to a competing firm. The court in *ABC* insisted upon full forfeiture because defendant's willful participation in a conspiracy to steal employees and accounts rendered his performance as an agent incomplete. In the instant case, the evidence supports the trial court's conclusion that Baylor continued to work diligently for the plaintiff corporation, while forming an independent company which competed to some extent with Monotronics. Further, the evidence adduced at trial tended to show that plaintiffs had acquiesced in Baylor's competitive activity. No such acquiescence was apparent in *ABC*.

Finally, and we think most importantly, the record before us establishes that the plaintiffs benefitted substantially from Baylor's performance of his duties during the period of his breach. Due primarily to his efforts, Monotronics sales rose and along with them, the incomes of the plaintiff principals. This factor was utterly lacking in *ABC*, and ritualistic application of that rule would produce an extremely harsh and unjust result in this case.

In its order, the trial court made reference to "equitable principles" which worked to prevent an order of complete forfeiture in this case. Other jurisdictions have recognized the need for flexibility in their applications of the forfeiture rule. For instance, in *Richardson v. Blue Grass Mining Co.* (E.D. Ky. 1939), 29 F. Supp. 658, *aff'd* (6th Cir. 1942), 127 F.2d 291, *cert. denied* (1942), 317 U.S. 639, 87 L. Ed. 515, 63 S. Ct. 30, the court found that the defendants had breached their fiduciary duties by diverting corporate funds and property to their own use. While

acknowledging the general rules of such a breach will result in a forfeiture of the right to compensation, the court noted that the rule was not so rigid as to leave no room for the exercise of judicial discretion by a court of equity. The court refused to order full forfeiture, noting that the defendants had served the corporation efficiently and had materially contributed to the success of the enterprise. (Accord, *Production Machine Co. v. Howe* (1951), 327 Mass. 372, 99 N.E.2d 32.) We find that the trial court was within its discretion in refusing to order forfeiture and in granting the back salary payment sought by Baylor.

## III

Plaintiffs contend that the court erred in its refusal to order restitution of overtime and commission payments drawn by defendant. We find that the court's order in this regard is supported by the manifest weight of the evidence.

The trial court found that the evidence tended to show an agreement by the principals to pay commissions for sales. The court noted that Baylor's conduct was consistent with his account that the parties had reached such an agreement in 1978. Sales rose substantially in that year and continued to rise through the next year. The court also noted that testimony of the two plaintiff principals that no such agreement existed was overweighed by evidence which indicated that all the principals received commission checks. There was some testimony to the effect that although they received such checks, Plante and Archer understood them to be reimbursement for overtime. However, Plante testified that he received a check in excess of $600 which he, in fact, understood to be a commission payment. The court also noted that upon learning in early 1979 that defendant had received over $5,000 in commission payments, the plaintiffs were silent. Characterizing this silence as acquiescence the court held that, at the very least, plaintiffs had ratified that action.

The court also found that the evidence did not support the allegation that defendant had improperly paid himself overtime. The evidence presented by plaintiffs on this point centered upon their contention that defendant's "overtime" had been spent in pursuit of his own personal business. Once again, the evidence relied upon by Monotronics in urging reversal is the testimony of Monotronics employees, including the current wife of plaintiff John Archer. The trial court stated that it believed these witnesses to have been biased, and apparently did not choose to rely heavily on their testimony. It is not the function of a reviewing court to second guess the trier of fact on matters of credibility, and once again we decline to do so. The trial court also commented, and we agree, that any injury resulting from the defendant's conduct was fully redressed by virtue of the fact that the corporation had been granted damages in the

amounts of Baylor's gross profit from his other endeavors. We note that the testimony clearly established that Baylor had actually experienced a net loss on these ventures.

## IV

■■■ Finally, Monotronics claims that the court erred in failing to grant punitive damages in this case. The law in Illinois is clear that the final determination of whether punitive damages should be awarded is left to the trier of fact and that, absent an abuse of discretion, the determination will not be disturbed by a reviewing court. (*Anvil Investment Limited Partnership v. Thornhill Condominium, Ltd.* (1980), 85 Ill. App. 3d 1108, 407 N.E.2d 645.) The trial court committed no abuse of discretion here. The evidence adduced indicated that the members of this closed corporation had become increasingly disenchanted with each other over the years, and that this disenchantment finally resulted in a lawsuit. Nothing in the record suggests that the defendant's behavior was either fraudulent or malicious. Illinois law provides for punitive damages only upon such a showing. See *City of Chicago v. Martin* (1868), 49 Ill. 241.

The trial court in this case was confronted with a complicated and highly acrimonious "business divorce." In addition to being supported by the evidence contained in the record, the order entered by the circuit court of Du Page County was fair and evenhanded. Accordingly, we affirm.

Affirmed.

NASH and REINHARD, JJ., concur.