**COUNTY OF COOK, Plaintiff,**

v.

**Joan LYNCH, et al., Defendant.**

**No. 81 C 5985.**

United States District Court,
N.D. Illinois, E.D.

Oct. 23, 1985.

Mark R. Davis, Asst. State's Atty., and Richard M. Daley, State's Atty. of Cook County, Chicago, Ill., for plaintiff.

John A. Dienner, II, Matthias A. Lydon, Pierce, Lydon, Griffin & Montana, Chicago, Ill., for defendant.

**ORDER**

NORGLE, District Judge.

After a jury trial in 1981, Joan Lynch ("LYNCH") was convicted of participating

in a conspiracy to obtain fraudulent real estate tax assessment reductions in violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). The "pattern of racketeering activity" with which Lynch was charged consisted of "multiple acts of bribery and mail fraud, involving payments of money to Jimmie Smith, James Woodlock and other officials at the Board of [Tax] Appeals." Indictment, *U.S. v. Lynch,* # 84 CR 97, at Count 14, ¶ 6. Her conviction was affirmed by the Seventh Circuit Court of Appeals in September of 1982, *United States v. Lynch,* 699 F.2d 839 (C.A.7 1982). While Lynch's appeal was pending, the County of Cook ("COUNTY") filed this suit to recover treble damages under § 1964(c) of RICO (Count I) and an equitable accounting by Lynch (Count II). Judge Decker granted the County's motion for partial summary judgment on Count I and summary judgment on Count II. *County of Cook v. Lynch,* 560 F.Supp. 136, 140–41 (N.D.Ill. 1982).

In granting the County's motion for partial summary judgment on Count I, Judge Decker held that Lynch's prior conviction under § 1962(d) estopped her from denying liability in the County's civil suit. 560 F.Supp. at 140. At the same time, however, Judge Decker noted the burden of establishing the "remaining elements of liability under 18 U.S.C. § 1964(c), i.e., that (1) the Plaintiff was injured in its business or property (2) by reason of the Defendant's violation of Section 1962" remained with the County. *Id.* The County now uses Lynch's conviction under § 1962(d) and Judge Decker's grant of partial summary judgment as the basis for its present motion for summary judgment on the remainder of Count I—the § 1964(c) claim for treble damages.

The County maintains it was injured in its business or property by reason of Lynch's violation of RICO because it was forced to pay for the services of two corrupt officials (Woodlock and Smith) which were never performed. Lynch does not deny that such an injury is cognizable under § 1964(c). *E.g., Hellenic Lines Ltd. v.*

*O'Hearn,* 523 F.Supp. 244, 248 (S.D.N.Y. 1981). Nor does Lynch disagree that the County's injury resulted from a violation of RICO.

The County suggests the proper measure of damages in this case is the entire salaries of the two corrupt officials during the period of the bribery scheme. This measure of damages is drawn from the common law remedy provided by Illinois courts for a tortious interference with an employment contract. *E.g., ABC Trans National Transport v. Aeronautics Forwarders,* 413 N.E.2d 1299 (1st Dist 1980); *Vendo Co. v. Stoner,* 58 Ill.2d 289, 321 N.E.2d 1 (1974). *See also NSC International Corp. v. Ryan,* 531 F.Supp. 362, 363 (N.D.Ill.1981) (on issue of availability of jury trial in civil RICO action; court found civil RICO "most closely resembles an action for tortious interference with economic relations"). Strictly speaking, Lynch does not object to the County's position that its damages under RICO should be measured with reference to the common law remedy for a tortious interference with contract. *See* Deft's Memo at 9. *See generally Sutherland Statutory Construction* § 50.01 *et seq.* (4th ed. 1984). She does argue, however, that the County has failed to meet its burden under Fed.R.Civ.P. 56 and that she cannot be held liable for damages caused by other independent conspirators. The former argument raises issues involving the County's use of collateral estoppel in this action; the latter argument raises the issue of whether Lynch may be held liable for damages potentially resulting from the acts of other independent conspirators. This opinion first discusses the issues raised by the County's theory of damages and then proceeds to determine the reach, if any, of collateral estoppel in this lawsuit.

## DAMAGES

The County maintains the proper measure of damages in this case is supplied by analogy to the remedy provided for the common law tort of intentional interference with contract. The remedy provided by Illinois courts for a tortious interference

with an employment contract is the entire amount of the disloyal employee's salary during the period of disloyalty. *See ABC, supra,* at 1315. The caselaw does not make an allowance in damages for a disloyal employee's periodic loyalty. The entire salary is forfeited under the rationale that the employer is paying for all of the disloyal employee's performance and not just part of it. *ABC, id.,* at 1314, 1315. The same result could be reached on a breach of fiduciary duty theory. *See Monotronics Corp. v. Baylor,* 107 Ill.App.3d 14, 62 Ill. Dec. 760, 765, 436 N.E.2d 1062, 1067 (2d Dist.1982). Thus, if several parties conspire to interfere with an employer/employee contract, they will be jointly and severally liable for the entire salary of the disloyal employee. There can be no apportionment of damages among co-conspirators. Lynch does not dispute this.

Lynch contends that she was not the only person paying bribes to Woodlock and Smith. She names various persons ("on information and belief") who were making payments to the two Board members and insists that those independent payments were made without her knowledge or participation. Deft's Memo at 7–8. From this Lynch argues she may not be held jointly and severally liable for the conduct of persons with whom she neither conspired nor acted in concert. In essence, Lynch argues she is only liable for only a portion of the County's damages because others were also paying bribes to Woodlock and Smith. Such an argument suggests damages in this case can and should be apportioned.

The County maintains that its damages are not susceptible to apportionment among *all* potential defendants. Consequently, because apportionment is not possible, Lynch may be held solely liable for its entire damages notwithstanding the existence of independent bribery schemes involving other potential defendants. *See generally Prosser and Keeton on Torts* § 52 (1984) ("PROSSER & KEETON").

Ordinarily a tort plaintiff bears the burden of proof of his damages as to each defendant. However, where the independent, successive acts of several tort-feasors result in an indivisible injury to the plaintiff, then the burden of proof shifts and the tort-feasors are required to bear the burden of proving any reasonable apportionment of damages. To do otherwise would penalize an innocent plaintiff merely because his injury was caused by several tort-feasors. Thus, if the County's damages are indivisible, the burden of apportioning damages rests with Lynch. Her inability to carry that burden will result in liability for the entirety of the County's damages. This principle is applied most frequently in personal injury cases (*e.g., Phennah v. Whalen,* 28 Wash.App. 19, 621 P.2d 1304, 1309–10 (1980) ), but it also has been applied in other contexts as well (*e.g., Ricky Smith Pontiac v. Surbaru of New England,* 14 Mass.App. 396, 440 N.E.2d 29 (1982) (unfair and deceptive trade practices in violation of state statute) ).

The issue, therefore, is whether the County's damages are subject to any rational apportionment among the several independent tort-feasors. Illinois caselaw (*c.f. Monotronics Corp. v. Baylor,* 107 Ill. App.3d 14, 62 Ill.Dec. 760, 765, 436 N.E.2d 1062, 1067 (2d Dist.1982) ) and The Restatement (Second) Torts ("RESTATEMENT") suggest the County's injury (deprivation of the loyal services of its employees resulting from an intentional interference with contractual relations) is not the kind of injury which is capable of apportionment.

Section 433A of the Restatement states the rule for apportionment of damages among two or more causes:

(1) Damages for harm are to be apportioned among two or more causes where

    (a) There are distinct harms, or

    (b) There is a reasonable basis for determining the contribution of each cause to a single harm.

Section 433B(2) shifts the burden of proof that damages can be apportioned to the defendant whenever two or more tort-feasors have caused the plaintiff's injury and one of the defendants seeks to limit his liability. Consequently, if a defendant at-

tempting to claim the benefits of apportionment fails to meet his burden, the full responsibility for plaintiff's injury will fall upon him. Comment (d) to section 433B states the basis for the rule:

The reason for the exceptional rule placing the burden of proof as to the apportionment upon the defendant ... is the injustice of allowing a proved wrongdoer who has in fact caused harm which he has inflicted has combined with similar harm inflicted by other wrongdoers, and the nature of the harm itself has made it necessary that evidence be produced before it can be apportioned. In such a case the defendant may justly be required to assume the burden of producing that evidence, or if he is not able to do so, of bearing the full responsibility. As between the proved tort-feasor who has clearly caused some harm, and the innocent plaintiff, any hardship due to lack of evidence as to the extent of the harm caused should fall upon the former.

Consideration of the two elements identified in § 433A of the Restatement suggests the County's injury cannot be apportioned. Moreover, the remedy provided by Illinois courts for a tortious interference with contract (forfeiture of the disloyal employee's salary during the period of disloyalty) convinces the Court that Lynch cannot meet her burden of establishing a rational means of apportionment of damages in this case. *See Restatement,* § 433B(2).

As a practical matter, the very nature of the County's injury (deprivation of the loyal services of its employees over a 5 year period) prevents any distinction between the harm caused by Lynch's wrongful acts (participation in the scheme to bribe Board Officials over the five year period) and other independent, but similar, wrongful acts. The injury to the County, when one of its officials accepts a bribe as part of a continuing conspiracy, can only be described as a continuing injury. The disloyalty caused by the scheme in which Lynch participated spanned a five year period and she may not now isolate each payment to an official in order to reduce her liability

for each of those years. *See Prosser & Keeton, supra,* at 347–48.

Similarly, there is no reasonable basis for determining the portion of damages attributable to each independent tort-feasor. *See Restatement* § 433A(1)(B). The disloyalty caused by the scheme with which Lynch was charged spanned a five year period. In measuring the County's damages it is not the individual acts of bribery which require focus, but the prolonged, continuous scheme over the five year period. Consequently, Lynch may not now argue that because she was able to turn Woodlock and Smith on and off like a light switch for her individual cases, her liability should be limited to those individual bribery transactions. The possibility that others performed the same acts independent of Lynch is irrelevant to the continuous nature of the injury caused by Lynch. The County's injury resulting from Lynch's conduct progressed from the beginning of the scheme to its end without any breaks in between.

Further, the remedy provided by Illinois law for a tortious interference with contract (in this context an employment contract) also militates against apportionment of damages in this case. The damages provided by Illinois courts is equal to the entire amount of the disloyal employee's salary during the period of the disloyalty. It is the payment of the salary for the employee's misperformance that is the basis for the remedy, not, as Lynch suggests, the isolated acts of disloyalty. Thus, Lynch may be held liable for the salaries of Woodlock and Smith over the entire period of the bribery scheme without any apportionment for persons who may have performed similar, but independent acts of bribery. Having addressed Lynch's arguments regarding her potential liability, the focus now shifts to the reach (if any) of collateral estoppel in this lawsuit.

COLLATERAL ESTOPPEL

Collateral estoppel precludes the relitigation of issues which were actually litigated and necessarily determined in a previous lawsuit. *Parklane Hosiery Co. v.*

*Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The first element, actual ligation of an issue, reflects a due process concern that the party estopped must have had a full opportunity to litigate an issue before he is estopped from denying its resolution. The second element, that the issue was necessarily determined, assures the issue decided was sufficiently important in the prior case to command the full attention of the party estopped. Thus, the Court's obligation is to determine exactly what was put in issue and directly determined in the prior criminal prosecution. *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 560, 71 S.Ct. 408, 410, 95 L.Ed. 534 (1951). The fundamental consideration, however, is whether application of collateral estoppel would be fair to the defendant. *Parklane Hosiery, supra,* 439 U.S. at 331, 99 S.Ct. at 651–52.

In order to determine the exact issues decided, the record of the prior criminal prosecution must be examined "including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts." *Emich, supra,* 340 U.S. at 569, 71 S.Ct. at 414. In support of its motion for summary judgment the County has submitted copies of 1) the 14 count indictment against Lynch (dated November 1978) and 2) the "Judgment and Probation/Commitment Order" pertaining to Lynch's conviction. The County has also directed the Court's attention to the Seventh Circuit's resolution of Lynch's appeal from her conviction (*United States v. Lynch,* 699 F.2d 839 (C.A.7 1982)). The County has not submitted a transcript of Lynch's trial, nor has it provided a set of the instructions given to the jury. For the following reasons the Court finds the submissions by the County in support of its motion do not provide a sufficient basis for granting summary judgment in its favor on the collateral estoppel issues.

■ Initially Lynch argues that it is not possible to ascertain from the indictment whether the jury found she engaged in mail fraud, or bribery, or both offenses. The Court agrees. Paragraph 6 of Count 14 of the Lynch indictment charges Lynch knowingly conducted and participated in the affairs of an enterprise (the R.M. Lynch Company) "through a pattern of racketeering activity by committing multiple acts of bribery *and* mail fraud" involving payments of money to Woodlock and Smith. (emphasis added) There is no question that it was entirely proper for the government to draft Count 14 using the conjunctive "and" (e.g., "bribery *and* mail fraud"). *E.g., U.S. v. McCann,* 465 F.2d 147, 161 (C.A.5 1972). But drafting an indictment in this manner renders collateral estoppel in a later civil action rather problematic.

When an indictment charges several different ways, in the conjunctive, of committing an offense, then a conviction may be sustained if there is proof of any one (or more) of the means of commission. *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 249, 60 S.Ct. 811, 855–56, 84 L.Ed. 1129 (1940); *United States v. Murph,* 707 F.2d 895, 896–97 (C.A.6 1983); *Fields v. United States,* 408 F.2d 885, 887 (C.A.5 1969). *See also United States v. Austin,* 99 F.R.D. 292, 298–99 (W.D.Mich.1983). Thus, in making its determination that Lynch was guilty on Count 14, the jury may have found she committed mail fraud, or bribery, or both. Consequently, the indictment does not provide a basis from which the Court may determine the exact issues decided at Lynch's criminal trial.

The County makes much of the fact that Lynch appealed her conviction and the Seventh Circuit affirmed it. 699 F.2d at 839. But, as will become clear, collateral estoppel does not necessarily follow from the affirmance of a conviction. *See e.g., Anderson v. Janovich,* 543 F.Supp. 1124, 1132–34 (W.D.Wa.1982).

On appeal, Lynch argued her conviction was not supported by substantial evidence because the Government's evidence "hardly implicate[d] her in the bribery scheme." 699 F.2d at 841. After a review of the evidence presented at trial, the Court of

Appeals concluded that Lynch had knowledge of and participated in the scheme to bribe Woodlock and Smith both before and after her husband's death. 699 F.2d at 841, 842–43. Specifically the Court of Appeals noted that Lynch's company essentially "functioned by bribing the employees at the [Tax] Board to forge" documents and that Lynch personally paid Woodlock $500 in cash. *Id.* at 841. Moreover, Lynch admitted paying Woodlock and Smith more than $3000. *Id.* at 842. The Court of Appeals concluded that "substantial evidence supported the conclusion that [Lynch] knew of the [bribery] scheme and participated in it." *Id.* at 843. Although the findings and conclusions of the Court of Appeals do not bode well for Lynch, that decision (standing alone) cannot provide the sole basis for determining the reach of collateral estoppel in this lawsuit. "[I]t is the judgment, properly construed in the light of the pertinent facts, that creates the potential for estoppel, not the appellate decision affirming it." *Kurek v. Pleasure Driveway & Park Dist. of Peoria,* 583 F.2d 378, 380 (C.A.7 1978). As the Court has previously pointed out, the County chose not to submit a copy of the transcript of Lynch's criminal trial in support of the motion for summary judgment. Yet, that transcript is the most likely repository of the "pertinent facts" in this case. Thus, in failing to provide a transcript of Lynch's trial the County has failed to provide this Court with an adequate basis for determinating the precise facts and issues established at Lynch's criminal trial. Consequently, the County's motion for summary judgment must be denied.

■ Although it is a closer contest, the same fate befalls the County's attempt to establish the time frame for Lynch's involvement in the charged bribery scheme. Both parties agree that it is the County's burden on summary judgment to pinpoint the beginning and end of Lynch's participation in the bribery scheme as an element of its damage theory. In other words, the County may only receive damages for the period of time it was deprived of the loyal services of its employees. *See Vendo v.*

*Stoner,* 58 Ill.2d 289, 321 N.E.2d 1 (1974); *ABC Trans National Transport v. Aeronautics Forwarders,* 413 N.E.2d 1299 (1st Dist.1980) (salary forfeiture of disloyal employee limited to specific time period of employee's breach of duty). Lynch contends the County has not met its burden because "it is impossible to know ... the inclusive dates of the [charged] bribery scheme." That contention is too imprecise and is rejected.

Paragraph 6 of Count 14, on which the jury returned a verdict of guilty, charges Lynch with participation in the bribery scheme "[b]eginning in or around August, 1975, and continuing until in or about August, 1980." Lynch appears to have recognized the explicit time frame of the indictment in her arguments before the Court of Appeals. *See* 699 F.2d at 843. The nature of the remedy in this case (*see ABC, supra*) does not require any more exactitude than that stated in the indictment (*viz.* the County is entitled to the entire salaries of Woodlock and Smith for each year they accepted bribes, even if bribes were accepted for only part of a year). Thus, it is not (as Lynch argues) "impossible" to pinpoint the time frame involved here. The record provided by the County is simply inadequate to support collateral estoppel.

In sum, then, the County's motion for summary judgment must be denied at this time because of its failure to provide an adequate record from which this Court may determine the precise issues (and facts) determined in Lynch's criminal trial. The County is therefore ordered to provide *sworn and verified copies* of the following to the Court within 60 days; Lynch may have an additional 14 days to respond if she desires:

(1) the pleadings, transcripts and jury instructions from Lynch's criminal prosecution;

(2) a proposed Order specifying the facts which Lynch is collaterally estopped from relitigating as a result of her criminal conviction (e.g., that Lynch bribed Woodlock and Smith);

(3) an index to the proposed Order in # 2 above containing page references to the testimony in the transcript for each fact which the County contends Lynch is estopped from relitigating.

IT IS SO ORDERED.