**BAPTIST PHYSICIANS LEXINGTON, INC.; Baptist Healthcare System, Inc.; Michael McKinney, M.D.; Gregory Cooper, M.D.; and James Winkley, M.D., Appellants**

v.

**The NEW LEXINGTON CLINIC, P.S.C., Appellee.**

No. 2012–SC–000242–DG.

Supreme Court of Kentucky.

Dec. 19, 2013.

As Modified Feb. 20, 2014.

Winifred Bryant Becker, Anne Adams Chesnut, Theodore R. Martin, Counsel for Appellants Baptist Physicians Lexington, Inc., and Baptist Healthcare System, Inc.

Gregg E. Thornton, Licha Hannah Farah, Jr., Ashley Kristen Brown, Counsel for Appellant Michael Mckinney, M.D.

Benjamin Kessinger, III, Adrian M. Mendiondo, Counsel for Appellants Gregory Cooper, M.D. And James Winkley, M.D.

Thomas W. Miller, David Thomas Faughn, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Appellants Michael McKinney, M.D, Gregory Cooper, M.D. and James Winkley, M.D. (the "Physicians") are former employees of The New Lexington Clinic ("NLC") who resigned from that medical practice in early 2008 to practice at a nearby facility opened by Baptist Healthcare System, Inc. through its subsidiary Baptist Physicians Lexington, Inc. (collectively "Baptist.") Although the Physicians' employment agreements allowed for their departure on sixty days' notice and, subject to certain conditions, even their competition with their former employer, NLC brought actions against all three men for breach of fiduciary duties owed in their capacity as members of the NLC board of directors. NLC alleged that the Physicians used confidential information and recruited NLC personnel while still serving as NLC directors. Baptist was joined as a defendant on the grounds that it aided and abetted the Physicians' breaches. The trial court granted summary judgment dismissing the complaints on the ground that neither complaint [1] properly invoked Kentucky Revised Statute (KRS) 271B.8–300, a statute that court considered controlling as to all actions involving breach of a Kentucky corporate director's duties. The Court of Appeals agreed that the statute controlled but found the complaints sufficient to state a cause of action under Kentucky's liberal pleading standards and, thus, remanded for further proceedings.

Contrary to the lower courts' conclusions, KRS 271B.8–300 does not abrogate common law fiduciary duty claims against directors in Kentucky but essentially codifies a standard of conduct and standard of liability for directors that is derived from

---

**1.** The original complaint was filed against Dr. McKinney and a subsequent complaint, with identical claims, was filed against Drs. Winkley and Cooper.

business judgment rule principles. As it explicitly states, the statute applies to "any action taken as a director" and "any failure to take any action as a director." Preparing for and participating in a competing venture does not constitute the type of internal corporate governance conduct addressed in KRS 271B.8–300 and consequently the statute does not apply. Accordingly, NLC properly pled common law fiduciary duty claims on these alleged facts and this action must be remanded. As for the trial court's alternative ground for granting summary judgment, the absence of any damages flowing from the alleged breaches, there remain issues of material fact as to what damages, if any, were caused by the alleged breaches. However, the Physicians and Baptist are correct that, given the rights accorded the Physicians under their employment agreements, NLC has overstated the scope of the injuries that can fairly be said to flow from the alleged breaches of fiduciary duty.

### RELEVANT FACTS

NLC is a Kentucky professional services corporation with its principal place of business in Lexington. Since at least 1997, NLC, through its staff of doctors and other medical personnel, has provided medical care to individual patients at its facility in Lexington referred to as Veteran's Park. NLC also provides medical services at facilities in several other Kentucky communities. Beginning, respectively, in 1997, 2001, and 2003, NLC employed Drs. McKinney, Cooper, and Winkley at the Veteran's Park clinic. All three physicians also served on the corporation's board of directors. Throughout calendar year 2007 all three men were directors, with Drs.

McKinney and Cooper remaining on the NLC board until early February 2008.

Baptist[2] is a rival health care services provider, which, at some point prior to early 2007, commenced plans to open a clinic at Brannon Crossing in Jessamine County, just across the Jessamine–Fayette County line and less than two miles away from NLC's Veteran's Park facility. NLC alleges that in March 2007, Dr. McKinney met with a Baptist recruiter and soon thereafter agreed not only to accept a position at the soon-to-be Brannon Crossing clinic, but agreed also to help recruit other NLC physicians and staff. Throughout the rest of 2007 and into early 2008, according to NLC, Dr. McKinney, still an NLC director, revealed to Baptist confidential information about NLC's organization and revealed confidential salary information about NLC employees. NLC alleges that this information, in conjunction with Dr. McKinney's own recruiting efforts, ultimately enabled Baptist to hire away several NLC employees, including other physicians.

NLC maintains that Dr. McKinney deliberately deferred resigning from the NLC board so as to retain access to the confidential NLC information he shared with Baptist, and that his February 2008 resignation from the board and from his employment was followed in short order by the defection to Baptist of other NLC physicians and their staffs and by the transfer to Baptist of many of those physicians' patients. NLC's complaint alleges that Dr. McKinney's competitive acts and wrongful use of corporate information breached the fiduciary duty he owed the corporation as a director and that the breach caused financial harm to the corpo-

---

**2.** According to NLC, Baptist Healthcare System, Inc., is a Kentucky corporation headquartered in Louisville, and Baptist Physicians Lexington, Inc., also a Kentucky corporation, is a wholly owned subsidiary of Baptist Healthcare headquartered in Lexington.

ration. The complaint charges Baptist with having aided and abetted Dr. McKinney's fiduciary breach. Against all of these defendants NLC seeks compensatory and punitive damages, and against Dr. McKinney it seeks unspecified injunctive relief.

NLC's complaint against Drs. Cooper and Winkley makes similar allegations of competition by a director, misuse of corporate information, and resulting damages. Baptist is again alleged to have aided and abetted the directors' wrongful conduct. In addition to compensatory and punitive damages, this complaint seeks restitution of the salaries paid to the doctors during the period of their alleged disloyalty as well as any profits the defendants may have garnered attributable to the alleged wrongdoing.

The complaints thus allege the basic elements of a breach-of-fiduciary-duty cause of action: (1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation. Nevertheless, the trial court entered summary judgment dismissing all of NLC's claims because, in its view, "the only claims Plaintiff has pursued against the doctors are common law claims no longer viable as a matter of law, having been supplanted by [Kentucky Revised Statute (KRS) 271B.8–300]."

KRS 271B.8–300, in pertinent part, provides that "any action taken as a director, or any failure to take any action as a director, shall not be the basis for mone-

tary damages ... unless ... the breach or failure to perform constitutes willful misconduct or wanton or reckless disregard for the best interests of the corporation and its shareholders." KRS 271B.8–300(5)(b). In response to Baptist's motion for summary judgment, NLC argued that the statute does not apply in this case because the disloyal acts alleged against the physicians were not taken in each physician's capacity "as a director," but solely in his capacity as an individual. The trial court rejected that argument and ruled that because NLC had not pled the statute and later contested its applicability, it was precluded from pursuing what, in the trial court's view, is now a strictly statutory cause of action.

▇▇▇ The Court of Appeals reversed. It agreed with the trial court that KRS 271B.8–300 applies to NLC's damages claims, but it rejected the notion that either NLC's argument against applying the statute or its not having invoked the statute in its complaints somehow constituted a forfeiture of NLC's right to proceed under the statute.[3] Baptist and the Physicians argue here, as they did successfully in the trial court, that NLC somehow "disavowed" a statutory claim by contending that KRS 271B.8–300 does not apply. We agree with the Court of Appeals that the trial court erred in granting summary judgment to Baptist and the Physicians but our grounds for so concluding are entirely different.

3. Because of our conclusion regarding the scope of KRS 271B.8–300 and its inapplicability to this case, we do not reach the pleading issue addressed by the Court of Appeals. However our Rules of Civil Procedure (CR) eschew "technical forms of pleadings" CR 8.05(1), and all pleadings are to be "construed as to do substantial justice." CR 8.06. Refinement and correction of the legal theory during the pleading stage should be liberally allowed unless to do so would unfairly harm

the opposing side. *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky.1989) (" '[T]he Rules of Civil Procedure with respect to stating a cause of action should be liberally construed and ... much leniency should be shown in construing whether a complaint ... states a cause of action.' ") (*quoting Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky.1983)). To the extent *Sahni v. Hock*, 369 S.W.3d 39, 47 (Ky.App. 2011) suggests otherwise as to alleging claims pursuant to KRS 271B.8–300, it is incorrect.

## ANALYSIS

### I. The Trial Court Erred in Granting Summary Judgment as a Matter of Kentucky Corporate Law.

 Under CR 56, of course, summary judgment is generally not appropriate unless, following discovery and viewing the record in the light most favorable to the party opposing the motion, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Toyota Motor Manufacturing, Inc. v. Epperson,* 945 S.W.2d 413 (Ky.1996). The party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial, but the motion should be denied unless it appears that the non-movant has no realistic chance of ultimately prevailing. *Welch v. American Publishing Company of Kentucky,* 3 S.W.3d 724 (Ky. 1999) (discussing *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476 (Ky.1991)). As did the Court of Appeals, we review the trial court's summary judgment ruling *de novo. Carter v. Smith,* 366 S.W.3d 414 (Ky.2012).

### A. KRS 271B.8–300 Does Not Address a Director's Breach of Fiduciary Duties as Alleged in this Case.

 Kentucky courts have historically recognized that corporate directors owe fiduciary duties to the corporation and its shareholders, duties emanating from common law.[4] *Urban J. Alexander Co. v. Trinkle,* 311 Ky. 635, 224 S.W.2d 923, 926 (1949) (a director has a "fiducial relation to the corporation and its shareholders"; he must act in the "utmost good faith and to further the corporation's interest and busi-

ness" and may not acquire interests in "conflict or competition" with the corporation he serves). The duty of care and the duty of loyalty are the fundamental duties owed by a director although the evolution of corporate law nationally, particularly through decisions of the Delaware courts, has led some commentators to suggest that there are additional duties. See Julian Velasco, *"How Many Fiduciary Duties are There in Corporate Law?"* 83 So. CAL. L.REV. 1231 (2010) (recognizing the basic duties of care and loyalty as well as the more recently articulated duty of good faith and positing a case for two additional duties). This case requires consideration of the effect of KRS 271B.8–300, entitled "General Standards for Directors," on a claim that a corporate director has breached his fiduciary duties by misusing confidential information, seeking to hire corporate employees or otherwise acting contrary to the corporation's interest in anticipation of participation in a competing venture. As noted, both lower courts have concluded that this statute abrogates the common law and that any breach of a director's duties, including breach of the duties of "loyalty, faithfulness, honesty and fair dealing" as alleged in this case, must be pursued under the statute. We conclude otherwise, given the plain language of the statute.

KRS 271B.8–300 provides:

(1) A director shall discharge his duties as a director, including his duties as a member of a committee:

(a) In good faith;

(b) On an informed basis; and

(c) In a manner he honestly believes to be in the best interests of the corporation.

---

4. Recently in *Ballard v. 1400 Willow Council of Co–Owners, Inc.,* 430 S.W.3d 229 (Ky. 2013), this Court, construing standard of conduct language in KRS 273.215, held that the statutory duty owed by non-profit directors is owed solely to the corporation.

(2) A director shall be considered to discharge his duties on an informed basis if he makes, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, inquiry into the business and affairs of the corporation, or into a particular action to be taken or decision to be made.

(3) In discharging his duties a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:

(a) One (1) or more officers or employees of the corporation whom the director honestly believes to be reliable and competent in the matters presented;

(b) Legal counsel, public accountants, or other persons as to matters the director honestly believes are within the person's professional or expert competence; or

(c) A committee of the board of directors of which he is not a member, if the director honestly believes the committee merits confidence.

(4) A director shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (3) of this section unwarranted.

(5) In addition to any other limitation on a director's liability for monetary damages contained in any provision of the corporation's articles of incorporation adopted in accordance with subsection (2)(d) of KRS 271B.2–020, any action taken as a director, or any failure to take any action as a director, shall not be the basis for monetary damages or injunctive relief unless:

(a) The director has breached or failed to perform the duties of the director's office in compliance with this section; and

(b) In the case of an action for monetary damages, the breach or failure to perform constitutes willful misconduct or wanton or reckless disregard for the best interests of the corporation and its shareholders.

(6) A person bringing an action for monetary damages under this section shall have the burden of proving by clear and convincing evidence the provisions of subsection (5)(a) and (b) of this section, and the burden of proving that the breach or failure to perform was the legal cause of damages suffered by the corporation.

(7) Nothing in this section shall eliminate or limit the liability of any director for any act or omission occurring prior to July 15, 1988.

■ The cardinal rule of statutory construction is to give effect to the legislative intent, and the courts must derive that intent, if at all possible, from the language chosen by the General Assembly. *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky.2011). Here, the legislature has stated a standard of conduct for a director of a corporation in the "discharge of his duties." The KRS 271B.8–300(1) requirements of good faith, acting on an informed basis and in the best interests of the corporation are principles most often associated with the business judgment rule. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984) (business judgment rule presumes that "in making a business decision the directors ... acted on an informed basis, in good faith and in the honest belief that the action taken was in

the best interests of the company.") While the drafters of the Model Business Corporation Act emphasize that somewhat similar standard of conduct and director liability language in sections 8.30 and 8.31 of the Model Act is not intended to codify the business judgment rule,[5] KRS 271B.8–300 has been aptly referred to as the Kentucky business judgment statute. Rutheford B. Campbell, Jr., *Corporate Fiduciary Duties in Kentucky*, 93 Ky. L.J. 551, 570 (2004–05) (statute offers directors the protection of the business judgment standard). Certainly it codifies both the standard of conduct applicable to a director and the circumstances in which the director can be held liable for monetary damages or subjected to injunctive relief. Significantly, subsection (5) limits a corporate director's liability but it does so *only* in the context of "any action taken as a director, or any failure to take any action as a director." In short, when acting in his or her directorial capacity, a director must comply with the statutory standard of conduct. If he fails to do so, injunctive relief is available and if the conduct at issue is willful misconduct or reflects wanton or reckless disregard for the corporation and its shareholders, then monetary damages may also be recovered.

The limiting language in KRS 271B.8–300(5) clearly evinces the legislature's intent to accord corporate directors protection in making decisions regarding the corporation and the conduct of its business. But just as clearly, the statute does not purport to address circumstances where a director is acting, not in his capacity as a director, but in his own individual interest with respect to a matter beyond the conduct of the corporation's business, even if that extra-corporate matter may have some impact on the corporation. If a director is acting on his own accord in anticipation of competing with the corporation which he still serves, that conduct implicates the director's common law fiduciary duties, not KRS 271B.8–300.

Our conclusion that KRS 271B.8–300 addresses a director's action and/or inaction in the internal corporate decision-making context is buttressed by the commentary[6] accompanying KRS 271B.8–300:

Under the common law of Kentucky, courts would not interfere with *the internal affairs of a corporation* absent director or officer conduct constituting "constructive fraud" or "gross negligence." However, there have been no Kentucky cases reexamining this issue for thirty years. The KBA Committee was repeatedly reminded that Kentucky attorneys and businessmen have been frightened by the uncertainty of this important area of law. In the meantime, *courts in other states have shown they are now much less reluctant to become involved in judging corporate business decisions*, leading to the passage of legislation defining standards of conduct and liability. Thus, the liability environment for directors and officers of Kentucky corporations, both large and small, was perceived as far less certain than for directors of corporations in Indiana, Ohio, Tennessee, Virginia, and other states with new statutory stan-

---

5. See Model Bus. Corp. Act §§ 8.30, 8.31 (Official Comments at 130–31). The comment to § 8.31 expressly notes that directors may be liable, beyond the statute for "breaches of common law duties," including unauthorized use of corporate property or information and unfair competition with the corporation.

6. This commentary was provided in the Baldwin's Official Edition of the Kentucky Revised Statutes by members of the Kentucky Bar Association's Revised Model Business Corporation Act Committee.

dards of conduct and liability. The Act will eliminate this uncertainty in Kentucky in a manner consistent with the few old Kentucky cases that have been decided.

Under the Act (KRS 271B.8–300 and 271B.8–420), directors and officers will be personally liable for monetary damages to the corporation only if their conduct is shown by clear and convincing evidence to be willful misconduct, or wanton or reckless disregard for the best interests of the corporation and its shareholders. Directors with bad motives will be liable without threatening the ordinary director's normal risk-taking *in honest decision-making.* At the same time, the Act permits shareholders to obtain an injunction to block an improper corporate action by showing that directors or officers failed to act in good faith, on an informed basis, or in a manner honestly believed to be in the best interests of the corporation. The test for liability for monetary damages is consistent with the test under Kentucky common law, while the Act adopts a less rigorous standard for enjoining improper *corporate actions.*

(emphasis supplied).

The references to the "internal affairs of a corporation," courts "judging corporate business decisions" and "the ordinary director's normal risk-taking in honest decision-making" emphasize that the focus of KRS 271B.8–300 is corporate governance, not any action whatsoever that a person may take with respect to extra-corporate matters during his tenure as a director.

This interpretation is further supported by a decision of the Virginia Supreme Court, *Simmons v. Miller,* 261 Va. 561, 544 S.E.2d 666 (2001), construing similar language in the Virginia corporation statute. In that case, Miller was a director of Las Palmas Tobacco, Ltd., a corporation with the exclusive right to import and distribute a brand of Spanish cigars on the east coast of the United States. A Las Palmas shareholder, Simmons, brought suit alleging a breach of Miller's fiduciary duty based on Miller's "secretly and wrongfully replac[ing] Las Palmas with a different corporation, International," also engaged in importing and marketing cigars. 544 S.E.2d at 672. In her defense, Miller claimed the benefit of the "statutory business judgment rule" which provided in relevant part that a director shall discharge his duties "in accordance with his good faith business judgment of the best interests of the corporation." *Id.* at 675. The Virginia statute further provided that "a director is not liable for *any action taken as a director,* or *any failure to take any action,* if he performed the duties of his office in compliance with this section." *Id.* at 676. In rejecting Miller's argument that the statute controlled the breach of fiduciary duty claim, the Virginia court stated:

Code § 13.1–690 applies to the "discharge [of] duties as a director," and makes no distinction between duties of care and loyalty. We recognized in *Willard v. Moneta Building Supply, Inc.,* 258 Va. 140, 151, 515 S.E.2d 277, 284 (1999) that "Code § 13.1.690(A) does not abrogate the common law duties of a director." However, the protection of § 13.1–690(C) applies only to acts "taken as a director, or any failure to take any action," and is confined to the exercise of business judgment on behalf of the corporation. When the acts in question do not meet these criteria, Code § 13.1–690 does not apply.

The acts cited by Simmons as constituting Miller's breach of duty to Las Palmas include "secretly organizing Las Palmas International/Profesor Sila." Clearly, the organization of Internation-

al, a competitor, was not a corporate act of Las Palmas. In taking this action, Miller was not exercising business judgment on behalf of Las Palmas. Although implicating a common law duty of loyalty, this act does not fall within the scope of Code § 13.1–690.

544 S.E.2d at 577.

A similar conclusion is warranted here and, in fact, the U.S. District Court for the Eastern District of Kentucky has construed the Kentucky statute in precisely the same way. In *Gundaker/Jordan American Holdings, Inc. v. Clark*, 2008 WL 4550540, *3 (E.D.Ky.2008), the court stated:

> In *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991) and *Aero Drapery of Kentucky, Inc. v. Engdahl*, 507 S.W.2d 166 (Ky.1974), the Kentucky Supreme Court analyzed claims of breach of fiduciary duty based on the common law. *Steelvest* and *Aero Drapery* differ from the instant case in two important ways. First, the operative facts in both of the earlier cases occurred prior to the enactment of the statutes. Second, even if the statutes had been in force, they would not have applied. KRS § 271B.8–300(6) and § 271B.8–420(6) apply only to actions "taken as" a director or officer and to "failure[s] to take action" as a director or officer. Neither of the above-cited cases involves actions taken as a director or officer or failures to take action as a director or officer. In both cases, the breach of fiduciary duty was based on the defendant's formation of a competing business. Forming a competing business is not part of a director or officer's official role, and, therefore, cannot be considered to be an action taken as a director or officer or a failure to take action as a director or officer.

By contrast to *Steelvest* and *Aero Drapery*, in *Gundaker* the challenged actions included soliciting the revocation of proxies to prevent a quorum at the annual meeting of the corporation and voting to remove an officer of the corporation. The federal district court easily concluded that these actions were taken "as a director" of the company and were thus controlled by KRS 271B.8–300.

Contrary to the conclusions of the trial court and the Court of Appeals, KRS 271B.8–300 simply does not speak to all actions an individual takes while serving as a corporate director but only to those which he or she takes or fails to take while acting in a directorial role, *i.e.*, actions or inactions regarding corporate governance and the affairs of the corporation. For claims alleging breach of a director's fiduciary duties, especially the duty of loyalty, in the context of preparation for and participation in a competing enterprise, the common law principles elucidated in *Aero Drapery* and *Steelvest* continue to apply.

**B. Corporate Director "Competition" Claims Are Properly Analyzed Under Common Law as Set Forth in *Aero Drapery* and *Steelvest*.**

Kentucky law regarding the intersection of a corporate director's fiduciary duties and his preparation for, and participation in, a competing venture is essentially limited to two cases, *Aero Drapery* and *Steelvest*. In *Aero Drapery*, 507 S.W.2d at 166, Engdahl, an officer, director and shareholder of a custom drapery retailer, met with three key employees in the company's thirty-nine-person workforce to plan a competing venture. He shared confidential information with the three employees, including profit and loss statements and information regarding a confidential stock-bonus plan, and offered to loan them money so they could purchase stock in the new company. The four men

located a site for the new business, purchased yellow page listings and contacted fabric suppliers with which Aero Drapery did business. All of this occurred in an eight-week period prior to Engdahl's resignation. In concluding that the trial court had erred in granting summary judgment in favor of Engdahl on Aero Drapery's breach of fiduciary duty claim, this Court noted that the then-controlling statute, KRS 271.365, provided that directors "stand in a fiduciary relation to the corporation." Even "without this statute", the Court stated, the fiduciary nature of a director's relationship to the corporation "obligated [Engdahl] not to develop interests antagonistic to Aero without full disclosure." 507 S.W.2d at 169. The Court outlined Engdahl's directorial duties and breaches as follows:

Whenever a fiduciary possesses information and the withholding of that information will damage the corporation, it is his duty to fully disclose these facts to the corporation. The source of the information is not material. Engdahl knew of a forthcoming, simultaneous loss of key employees. A fiduciary could reasonably expect that this loss, without forewarning, would decrease the efficiency of Aero's operation. One of Engdahl's specific duties was the supervision of employee morale, and his failure to report dissatisfactions was a breach of his responsibility to Aero.

Engdahl breached his duty by aiding a competitor to copy the forms and charts of Aero. These forms and charts were not patentable ideas or trade secrets; yet they were corporate property which a fiduciary is bound to protect.

It often occurs that a fiduciary resigns and enters or creates a competing enterprise. Unless bound by contract, this is permissible, but he cannot, while still a corporate fiduciary, set up a competitive enterprise ... or resign and take with

him the key personnel of the corporation for the purpose of operating his own competitive enterprise....

*Id.* (citations omitted). After resignation, the *Aero Drapery* Court stated, a director is free to compete using his own "personal experience, enterprise, and knowledge, but he may not use prior fiducial confidences to profit at the expense of his former employer." 507 S.W.2d at 170. Ultimately the case was remanded to the trial court where "the type or types and measures of relief" to which Aero Drapery was entitled were questions addressable in the first instance by that court. *Id.*

Approximately seventeen years later, this Court, in *Steelvest*, outlined similar duties on the part of a director and officer of a steel company who left to form a competing venture, a new company which he had planned for eleven months prior to resigning. The Court held that the officer/director, Scanlan, "owed a duty of loyalty and faithfulness to the corporation ... [which] includes a duty not to act against the employer's interest." 807 S.W.2d at 483. In concluding that summary judgment in favor of Scanlan was erroneous, the Court noted the evidence of record regarding his pre-resignation activities:

Herein the facts, as developed, disclose that Scanlan, while still employed with Steelvest, made certain plans, arrangements, and preparations for setting up his own business to compete with Steelvest. He sought legal and accounting advice, made active efforts to acquire bank financing, and recruited investors, two of whom, coincidentally, were chief executive officers of major customers of Steelvest. Scanlan failed to disclose such activities to any representative of Steelvest. There is also some evidence of record that prior to his resignation from Steelvest, Scanlan indicated to pro-

spective investors and to bank personnel that he would bring with him some of the present employees of Steelvest. Just coincidentally/inferentially, as noted, shortly after Scanlan resigned from Steelvest, nine office and supervisory employees left the company to work for Scansteel.

*Id.* at 484. As in *Aero Drapery,* the *Steelvest* Court concluded that summary judgment was inappropriate and remanded the matter to the trial court for further proceedings.

While Kentucky law is not extensive, it is nonetheless instructive regarding the duties of a corporate director who plans to compete. The conduct alleged by NLC, misuse of corporate information and recruiting of NLC personnel prior to resignation, if proven, would support a claim for breach of the Physicians' common law fiduciary duties. Thus, the trial court erred in granting summary judgment as a matter of law.

## II. The Trial Court Erred in Concluding that No Damages Could Flow from the Breach of the Physicians' Fiduciary Duties.

■ As an alternative ground for its summary judgment, the trial court also concluded that NLC had "presented insufficient evidence to suggest that the alleged fiduciary breach was the legal cause of any damages claimed by [NLC]. [NLC] has not articulated or identified any harm to it nor benefit to the Defendants flowing from or attributable to the alleged fiduciary breach." Rejecting this alternative, the Court of Appeals noted that discovery had not been completed with respect to dam-

ages on either complaint.[7] We agree with the Court of Appeals that NLC should have an opportunity to pursue its breach of fiduciary duty claims and attendant damages discovery but deem it appropriate to address further the causation issue given the factual differences in this case vis-a-vis *Aero Drapery* and *Steelvest.*

Unlike the directors in *Aero Drapery* and *Steelvest,* the Physicians had employment agreements with NLC that specifically contemplated the potential of each physician, at some point in the future, competing with NLC. Dr. McKinney's contract was terminable on sixty days' notice by either party and contained a "Restrictive Competition and Confidentiality Agreement" as an addendum. Pursuant to the non-compete provision in the addendum, Dr. McKinney was prohibited from practicing medicine in Fayette County, Kentucky for a period of 360 days following termination of his employment with NLC. Dr. McKinney gave the requisite sixty days' notice and began practicing medicine at Baptist's Brannon Crossing facility, which indisputably is not in Fayette County. Drs. Winkley and Cooper also had employment agreements that were terminable by either party on sixty days' notice but the "Agreement Not to Compete" contained in Article 6 of their agreements, while for the same 360–day period, extended to locations within thirty miles of the physician's primary practice location. This thirty-mile radius encompasses the Brannon Crossing facility operated by Baptist. According to the Physicians and Baptist, Drs. Winkley and Cooper exercised their right to "opt out" of their non-compete clauses by paying,

---

**7.** Baptist and the Physicians maintain that the Court of Appeals failed to address this alternative ground for the trial court's ruling. We disagree. Although in this regard the Court of Appeals Opinion could certainly have been clearer, we agree with NLC that implicit in the Court of Appeals' observation about the status of damages discovery is its rejection of the trial court's alternative as premature.

collectively, over $500,000 in liquidated damages, as provided in Section 6.3 of their agreements. The "opt out" amount was specifically identified as "liquidated damages" in the employment agreements, which further provide that NLC and the respective physician "agree that said liquidated damages are reasonable and representative of the actual amount Employer would incur upon Employee's violation" of the non-compete provision.

Thus, unlike the directors in *Aero Drapery* and *Steelvest*, the Physicians had negotiated contracts which allowed them to leave NLC and even compete, consistent with the contracts' terms. This important distinction undoubtedly has bearing on the causation of damages issue which the trial court considered as an alternative ground for summary judgment and which must be addressed on remand. Simply put, if NLC establishes a breach of fiduciary duty by any of the Physicians (or aiding and abetting by Baptist) the recoverable damages are those caused by the actual breach of those duties, not some portion of the revenue stream generated by the Physicians through their medical practices after their departure. The Physicians' post-resignation practice at the Baptist facility was and is lawful, Dr. McKinney being beyond the geographic scope of his covenant not to compete and Drs. Winkley and Cooper having paid the agreed-upon liquidated damages so that they could continue to practice in the area. While the parties' contractual agreements as to future competition did not obviate the Physicians' duties as directors, they, most assuredly, have bearing on the measure of damages.

Additionally, it is apparent that NLC is not dealing in a product or commodity, like the custom draperies in *Aero Drapery* or industrial steel in *Steelvest*, but is instead a professional service corporation that provides medical care to patients through highly skilled professionals. Patients of those professionals can and do choose from whom they will receive their medical care. The patients that have been the subject of much dispute in this case did not belong to NLC and they do not belong to the Physicians and Baptist, a fact that should not be lost on any of the parties on remand.

While quantifying the damages that a corporation incurs when a director improperly uses confidential information or hires corporate employees for a competing venture is not an easy task, courts in other jurisdictions have tackled the task. *See, e.g., B & L Corporation v. Thomas and Thorngren, Inc.,* 162 S.W.3d 189 (Tenn. App.2004); *Monotronics Corp. v. Baylor,* 107 Ill.App.3d 14, 62 Ill.Dec. 760, 436 N.E.2d 1062 (1982). When fiduciary duty breaches are proven, Kentucky trial courts and juries are equally capable of making damage causation determinations on a case-by-case basis.

### CONCLUSION

The business judgment statute applicable to directors, KRS 271B–8–300, encompasses those situations where the director of a Kentucky corporation takes action or fails to take action in his capacity as a director. Preparing to compete and subsequently competing with the corporation are activities beyond the scope of the statute and such actions by a director continue to give rise to common law breach of fiduciary duty claims. The trial court and Court of Appeals erred in concluding otherwise, although the appellate court was correct in remanding this matter for further proceedings. On remand, if NLC establishes breaches of the Physicians' fiduciary duties, damages are recoverable for those injuries caused by the actual fiduciary breaches themselves. The parties have already, through the Physicians' employment agreements, accounted for the

prospect of future competition in a different medical practice. In the case of Dr. McKinney, the parties limited the geographic scope of the non-compete restriction and, with respect to Drs. Winkley and Cooper, they negotiated liquidated damages that represented the fair value of any future competition with NLC. Accordingly, we affirm the remand to the trial court with direction that all further proceedings be consistent with this Opinion.

All sitting. All concur.