(No. 57899.—

*In re* HENRY A. TOWLES, Attorney, Respondent.

*Opinion filed October 21, 1983.*

180

UNDERWOOD and MORAN, JJ., dissenting.

Daniel Drake and Charles S. Morgan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William A. Barnett, of Chicago, for respondent.

JUSTICE GOLDENHERSH delivered the opinion of the court:

On May 11, 1982, the Administrator of the Attorney Registration and Disciplinary Commission filed a one-count complaint against respondent, Henry A. Towles, who was admitted to the practice of law on January 9, 1950. A panel of the Hearing Board recommended that respondent be censured, and the Administrator filed exceptions. Four members of the Review Board found that censure was "a reasonable and appropriate discipline," and four found that respondent should be suspended for a period of six months. We allowed the Administrator's petition for leave to file exceptions. 87 Ill. 2d R. 753(e).

The record shows that on August 4, 1980, the United States Attorney for the Northern District of Illinois filed a three-count complaint charging respondent with wilful failure to file income tax returns for calendar years

1974, 1975 and 1976 in violation of Title 26 U.S.C. section 7203 (1976). The cause was tried before a jury, and a verdict of guilty was returned on all three counts. The district court found that, aside from these convictions, respondent was a "stellar citizen" and had not, through his actions, intended to defraud the United States, but had intended to eventually file his returns and pay his taxes along with interest and penalties. The court entered judgment on the verdict and sentenced respondent to five years' probation with the condition that the first 45 days be spent in a jail-type institution. The judgment was modified to permit respondent to serve the sentence on weekends so that he could continue his practice of law while on probation.

In his evidence deposition respondent testified that during the years 1974, 1975 and 1976 he was engaged in an embittered dispute with his ex-wife concerning visitation rights with his son and that in order to see each other his son and he had to meet surreptitiously. Respondent stated that he first became aware that his failure to file returns constituted criminal misconduct on March 22, 1978, when Internal Revenue Service agents visited him at his office. He testified that he had paid all taxes, penalties, and interest owed to the Federal Government.

Due to failing health respondent was not able to attend the proceedings before the Hearing Board but authorized his attorney to proceed in his absence. It was stipulated that respondent was born on March 4, 1914, in Texarkana, Arkansas. Respondent's attorney explained that respondent was 68 years old at the time of the hearing and introduced into evidence numerous letters from respondent's clients which had been sent to the district judge who sentenced respondent. These letters explained that respondent had performed a signifi-

cant amount of *pro bono* work for the people in his community and asked the judge to "show him every consideration possible." A letter from a Chicago attorney stated that he knew respondent well through working with and against him on various matters. This attorney stated that respondent "has contributed immeasurably to his community by his associations in various social clubs as well as his contributions to various community activities, especially during the trying times of the 1960's."

The panel of the Hearing Board made the following findings:

"1. That on March 12, 1981, Respondent was convicted of willful failure to file income tax returns for the years 1974, 1975 and 1976 in violation of Title 26 United States code section 7203. He was sentenced to five years of probation with the first 45 days to be spent in jail. The conviction was upheld by the Seventh Circuit Court of Appeals on December 8, 1981.

2. That the sentence of 45 days was modified, upon Respondent's request, to 22½ weekends. The purpose of this was to permit Respondent to continue his practice of law. At that time, Judge Grady found no intention on the part of the Respondent to commit fraud.

3. That Respondent filed his 1970 return in April of 1973; his 1971 and 1972 returns in January of 1975 and his 1973 return in February of 1977.

4. That in March of 1978, Respondent was visited by Special Agents inquiring as to the returns for the years 1974, 1975 and 1976.

5. That the Respondent filed the returns for 1974 and 1975 in April of 1978 and the return for 1976 in August of 1978.

6. That all taxes, penalties and interest due and owing from 1971 through 1976 were paid.

7. That Respondent does not practice in the field of taxation and has not represented clients in tax matters.

8. That until September of 1979, the Respondent was not aware that he could be held criminally liable for

his conduct and believed that the penalties and interest he paid was the sole sanction.

9. That the Respondent had no intention of not eventually filing the tax returns.

10. That the Respondent's net income for the years of 1974 through 1976 ranged from $14,000.00 to $20,000.00.

11. That Respondent was admitted to practice law in 1950 and to this date has an unblemished record.

12. That Respondent is 68 years old and suffering from hypertension and prostatitis.

13. That the Respondent was divorced in 1966 and from that time through 1976 he was involved in a bitter battle over visitation with his son.

14. That eight letters, written to Judge Grady at the time of sentencing, were introduced into evidence; six of these letters were from clients who hold the Respondent in highest esteem and speak of much pro bono work performed by Respondent; one is from a fellow attorney who has known Respondent and his reputation for 25 years and who regards Respondent highly as well as speaking highly of his reputation in the community and the final letter is from a Deputy Sheriff who speaks highly of Respondent and affirms the pro bono work performed by Respondent as well as his activities with the Lions Club.

15. That the Court found that Respondent's conduct was not fraudulent."

The hearing panel concluded that respondent's conviction constituted grounds for discipline. Citing *In re O'Hallaren* (1976), 64 Ill. 2d 426, the panel noted that "although conviction of wilful failure to file tax returns does not necessarily establish moral turpitude, it does establish misconduct constituting grounds for discipline in the absence of mitigating circumstance of an extraordinary nature." The hearing panel reviewed a number of disciplinary cases involving tax convictions and concluded that "although mitigating circumstances did exist they were insufficient to warrant no discipline." Despite the convictions for wilfully

failing to file tax returns, the hearing panel concluded that "respondent was under the honest misconception that interest and penalties were the sole sanctions for late filing." Two of the members of the hearing panel recommended that respondent be censured. One member concurred in the findings and conclusions of the hearing panel but recommended that respondent be suspended from the practice of law for one year. This member reasoned:

> "Respondent displayed a commendably high sense of responsibility to the public in the area in which he conducted his practice. However, that high sense of responsibility does not excuse his shocking lack of responsibility to the larger community of which he was a part and of which he took advantage by his cavalier approach to his duty of promptly paying his taxes. His commendable practice habits are not mitigating circumstances."

The Review Board incorporated the findings of the hearing panel. After reviewing the facts of the case, the Review Board stated:

> "We recognize that an attorney cannot disregard valid laws of the land without diminishing public confidence in and bringing some measure of disrepute to the profession. We further recognize that such conduct warrants discipline. We must keep in mind, however, that a respondent is disciplined not because of his conviction but because of his underlying conduct."

Four members of the Review Board recommended that respondent be censured, and four members recommended that respondent be suspended for a period of six months.

The Administrator of the Attorney Registration and Disciplinary Commission filed exceptions to the recommendations of the Review Board. The Administrator argues that respondent should be suspended for one year, that the suspension should be stayed, and that respondent should be placed on disciplinary probation subject to the following conditions: that respondent report twice each year to the

Administrator and state under oath that he has complied with the conditions of his Federal probation; that respondent comply with Federal and State income tax laws "and provide the Commission with a waiver permitting verification of tax returns"; that respondent pass the multistate professional responsibility examination; that respondent pay the costs incurred in court-reporting fees and transcripts of the hearing before the Hearing Board prior to the expiration of probation; and that if respondent violates a condition of his probation the stay of suspension would be vacated. Citing *In re Driscoll* (1981), 85 Ill. 2d 312, the Administrator argues that this court has the inherent power to place respondent on disciplinary probation and that this disposition would best serve the interests of the public and of respondent's clients.

We are of the opinion that probation is not necessary in this case. *Driscoll* involved an attorney whose misconduct was the result of alcoholism. Noting the possibility that Driscoll could possibly once again succumb to alcohol, this court, in addition to a six-month suspension, required that Driscoll periodically report to the Disciplinary Commission. Unlike *Driscoll*, respondent's misconduct was not caused by a chronic problem, but rather by either negligence or ignorance, and is unlikely to recur. We are of the opinion that probation would impose a needless administrative burden on both respondent and the Commission and decline to impose it in this case.

We conclude that censure is appropriate to the circumstances of this case. "Our primary consideration in determining the nature and extent of discipline to be imposed in any particular case is the protection of the public and the integrity of the profession." (*In re Kramer* (1982), 92 Ill. 2d 305, 311.) The "public" which is to be protected through disciplinary measures is comprised of the public at large, but primarily consists of those who are directly af-

fected by the attorney's professional conduct. It has not been suggested that respondent's professional conduct has adversely affected those with whom respondent has had professional dealings, and it is undisputed that respondent's clients will suffer if he is suspended from the practice of law. As one member of the hearing panel pointed out, failure to timely file tax returns is indicative of a lack of responsibility as a citizen of the United States. Protecting the interests of Federal taxpayers is primarily the responsibility of the Federal courts through their implementation of the criminal penalties imposed by law. Here, the district court which sentenced respondent recognized that preventing respondent from continuing to represent his clients was not necessary to protect the Federal taxpayers' interests and modified respondent's jail sentence from 45 consecutive days to 22½ weekends in order to enable him to continue his practice. Thus, the remaining consideration for determining the extent of discipline to be imposed in this case is the protection of the integrity of the profession. Here, where violation of the Federal tax laws is accompanied by extenuating circumstances and the attorney's professional reputation is otherwise unblemished, that objective is accomplished by censuring respondent. *In re Crane* (1961), 23 Ill. 2d 398, 401-02.

*Respondent censured.*

JUSTICE UNDERWOOD, dissenting:

In a disciplinary proceeding in which neither the hearing panel nor the Review Board is unanimous, it is not surprising that the members of this court are in disagreement as to the appropriate sanction. Two members of the hearing panel believed censure sufficient, while the third member urged one year's suspension; the Review Board was evenly divided between censure and six months' suspension. Justice Moran and I believe that the circumstances

here require something more than censure, and that six months' suspension is appropriate.

In addition to failing to file income tax returns for 1974, 1975 and 1976, it is undisputed that respondent did not file his return for 1970 until April 1973, his returns for 1971 and 1972 until January 1975, and his 1973 return in February 1977. He asserts that he was unaware until 1979 that failure to file was a criminal offense despite the fact that Federal agents investigating his case had contacted him approximately one year earlier. But, even if true, it seems rather strange to treat unawareness of the criminal penalty as a mitigating circumstance when respondent clearly knew the law required him to file. A lawyer's obligation to obey the law is certainly no less than that of the nonlawyer, and in neither situation is that obligation dependent upon or proportionate to the severity of the sanctions imposed for disobedience.

While absolute uniformity in disciplinary sanctions is impossible of achievement, the gross disparity between the censure imposed here and the 18-month and one-year suspensions imposed in the similar cases of *In re O'Hallaren* (1976), 64 Ill. 2d 426, and *In re Gold* (1979), 77 Ill. 2d 224, ought not to exist. At least a six-month suspension should be imposed here.

JUSTICE MORAN joins in this dissent.