DONALD LURZ, Plaintiff-Appellee and Cross-Appellant, v. LAWRENCE R. PANEK et al., Defendants-Appellants and Cross-Appellees (American National Bank and Trust Company of Chicago et al., Defendants and Cross-Appellees).

Second District   No. 2—88—0373

Opinion filed August 4, 1988.

John B. Kincaid, of Mirabella & Kincaid, of Wheaton, for appellant Lawrence R. Panek.

James I. Marcus and Michael Fries, both of Williams & Marcus, of Chicago, for appellant American National Bank & Trust Company.

Jerold S. Solovy, Patrick J. Phillips, and Darryl L. DePriest, all of Jenner & Block, of Chicago, for appellant CMC Real Estate Corporation.

Normal H. Lehrer, of Lehrer, Flaherty & Canavan, of Wheaton, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendant, attorney Lawrence Panek, appeals from a judgment awarding plaintiff, Donald Lurz, compensatory and punitive damages stemming from defendant's failure to disburse promptly funds obtained on behalf of plaintiff in an underlying personal injury action. Plaintiff cross-appealed. The initial appeal by defendant and the initial cross-appeal by plaintiff were dismissed by this court because there was no final appealable order entered in the trial court. (*Lurz v. Panek* (1988), 166 Ill. App. 3d 179, 519 N.E.2d 1110.) The trial court has since entered a final and appealable order, and we have agreed to take the case on the existing record as supplemented and the briefs

on file. We affirm.

This case arises from defendant's representation of plaintiff in a personal injury action against the Chicago, Milwaukee, St. Paul & Pacific Railroad Company (Railroad). The personal injury case was tried by Joseph Lascaro and resulted in a verdict in plaintiff's favor of $66,596.64. A check in satisfaction of the judgment was drawn by the Railroad and made payable to plaintiff, defendant, and Lascaro. The check was delivered to defendant's office and was payable through the Continental Illinois National Bank & Trust Company of Chicago (Continental). Upon receipt of the check, defendant endorsed it with plaintiff's name and deposited it into his client fund account at the American National Bank & Trust Company of Chicago (American). American thereafter negotiated the check to Continental. Continental then negotiated the check to the Railroad, and payment was approved. Over seven months later, defendant issued a check to plaintiff in the amount of $43,358.34; the remainder was retained to satisfy attorney fees and costs.

Plaintiff filed suit in the circuit court seeking compensatory and punitive damages against defendant and Lascaro for fraud (count I), breach of fiduciary duty (count II), and conversion (count III). Thereafter, the complaint was amended to add count IV, which alleged defendant and Lascaro had violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 et seq.). In addition, separate counts were brought against American, Continental, and the Railroad alleging conversion and seeking the face value of the check issued by the Railroad.

The claims against defendant and Lascaro were considered first. Lascaro was voluntarily dismissed by plaintiff on account of plaintiff's inability to serve Lascaro. The cause then proceeded solely against defendant. Summary judgment on liability as to counts I and II was entered in favor of plaintiff; summary judgment on liability and actual damages (interest on the funds for the interim period) on count III was entered in favor of plaintiff; and summary judgment on liability was entered in favor of defendant on count IV. A jury trial for purposes of assessing the remaining damages resulted in an award of $2,000 in compensatory damages and $39,000 in punitive damages.

As to the claims against American, Continental, and the Railroad, the court determined on summary judgment that American and the Railroad were liable for $2,000 plus 8% interest from August 31, 1983, to December 11, 1985, and the sum of the interest on $43,358.34 at the rate of 8% from August 31, 1983, to April 6, 1984. The court further determined plaintiff was entitled to only one satis-

faction of the "$2000 plus interest judgment."

The issues presented by defendant on appeal, as we perceive them, are: (1) whether the trial court abused its discretion in denying defendant's motion to dismiss on grounds plaintiff failed to exercise due diligence in serving Lascaro; (2) whether the trial court's summary judgment rulings on counts I, II, and III were improper; (3) whether count I should have been dismissed because it stated the same cause of action as count II and separate damages were not proved under counts I and II; (4) whether the trial court erred in denying a motion *in limine*; (5) whether the evidentiary rulings at trial were proper; and (6) whether the jury was properly instructed. Three issues are raised by plaintiff on cross-appeal: (A) whether the trial court erred in granting summary judgment in favor of defendant on count IV; (B) whether plaintiff should have been awarded the entire contingent fee retained by defendant as compensatory damages; and (C) whether the trial court used the wrong measure of damages in the causes of action against American and the Railroad, and whether granting setoffs was improper.

I

We first address the contentions raised in defendant's first argument which were not disposed of in the opinion dismissing the initial appeal. Defendant contends the trial court abused its discretion in denying his motion to dismiss brought pursuant to Supreme Court Rule 103(b) (107 Ill. 2d R. 103(b)). Defendant further asserts the court erred in feeling compelled to grant plaintiff's motion to dismiss voluntarily the complaint against Lascaro (Ill. Rev. Stat. 1987, ch. 110, par. 2—1009), before ruling on defendant's Rule 103(b) motion.

On June 10, 1985, some 10 months after the original complaint was filed, defendant moved to dismiss the complaint against him on the ground plaintiff had failed diligently to serve codefendant Lascaro. Plaintiff responded by submitting an affidavit of a special process server which stated attempts to locate Lascaro had been unsuccessful. In addition, plaintiff's counsel stated another process server had also failed to locate Lascaro. Counsel further stated he had unsuccessfully searched telephone directories and the post office. The telephone number listed was the number for defendant's law office. Counsel called the number on 25 to 30 occasions from the time the summons was issued up until two days before the hearing and was told on each occasion that Lascaro was not available. He also had another attorney attempt to contact Lascaro by telephone, but he was unsuccessful as well. Defense counsel claimed he was able to contact

Lascaro within 15 minutes based on information obtained during defendant's deposition. Although the court was troubled by the sparse factual basis in the affidavit of the special process server, the court denied the motion.

■ A trial court's ruling on a Rule 103(b) motion to dismiss will not be disturbed absent an abuse of discretion. (*Semersky v. West* (1988), 166 Ill. App. 3d 637, 642, 520 N.E.2d 71, 74.) Whether a plaintiff has carried its burden of showing reasonable diligence in attempting to serve a defendant depends on several factors which need not be repeated here. (*Viking Dodge, Inc. v. Hofmann* (1987), 161 Ill. App. 3d 186, 189, 514 N.E.2d 248, 250.) We have reviewed the record, as outlined above, and conclude the trial court did not abuse its discretion in denying defendant's Rule 103(b) motion to dismiss.

■ As to defendant's assertion that the trial court erred in ruling on plaintiff's section 2—1009 motion to dismiss Lascaro voluntarily prior to ruling on defendant's Rule 103(b) motion to dismiss, we find no reversible error. In *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322, our supreme court determined when a plaintiff relies on a section 2—1009 motion in response to a pending Rule 103(b) motion, the Rule 103(b) motion must be heard on the merits prior to ruling on the section 2—1009 motion. The court reasoned the critical judicial function of administering justice without delay would be unduly infringed upon if a plaintiff were permitted to avoid the consequences of failing to exercise due diligence in serving process simply by filing a motion to dismiss under section 2—1009. (*O'Connell*, 112 Ill. 2d at 282-83, 492 N.E.2d at 1326.) The *O'Connell* decision has retroactive application. (*Muskat v. Sternberg* (1988), 122 Ill. 2d 47, 49-50, 521 N.E.2d 932, 935-36.) Therefore, the fact the hearing in the present case occurred prior to the *O'Connell* decision is not dispositive. However, although the court granted plaintiff's motion to dismiss Lascaro prior to considering defendant's Rule 103(b) motion on the merits, plaintiff did not avoid the consequences of failing to exercise due diligence in serving process on Lascaro. Immediately following the granting of the section 2—1009 motion, the court considered and denied defendant's Rule 103(b) motion to dismiss. As stated, our review indicates the court's ruling was not an abuse of discretion. In other words, there was no failure to exercise due diligence in serving process. Under the circumstances of this case, we conclude the technical violation of the ruling in *O'Connell* does not require reversal.

## II

■■ Defendant next contends the trial court's summary judgment rulings on counts I, II, and III were improper. In support of their respective contentions in the trial court, both parties placed significant reliance on the testimony contained in the defendant's deposition. The court, in turn, relied in part on the defendant's deposition in reaching its decision to enter summary judgment on counts I and II as to liability and count III as to liability and damages. On appeal, defendant maintains there were questions of fact that precluded summary judgment. However, the record on appeal does not contain a transcript of the defendant's deposition. To determine whether summary judgment was properly entered by the trial court, it is imperative that a court of review be provided with a sufficient record from which to render a decision. (*Fitzgerald v. Van Buskirk* (1974), 16 Ill. App. 3d 348, 349-50, 306 N.E.2d 76, 77.) The burden of supplying a sufficient record on appeal rests with the appellant. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 960.) The absence of the defendant's deposition prevents us from determining whether the trial court's summary judgment rulings were improper.

■ Apart from the deficiencies in the record, it does not appear from our review that defendant's claim has any merit. The admissions of defendant in response to plaintiff's request to admit, and the representations made by the parties concerning the contents of defendant's deposition, indicate to us that summary judgment was appropriate. It is beyond dispute that defendant obtained the check satisfying the judgment in favor of plaintiff shortly after the completion of trial. Defendant signed plaintiff's name to the check, deposited the check in his business account, and did not notify plaintiff the judgment had been received. For almost eight months, defendant repeatedly told plaintiff the judgment had not been paid. On one occasion defendant falsely told plaintiff the judgment would not be paid unless plaintiff agreed to a 20% reduction. On another, defendant told plaintiff the judgment could not be paid until the "90-day period to appeal" had expired. Finally, even if defendant was acting under a power of attorney, which was completely unsubstantiated and disputed by plaintiff, we believe the undisputed facts are sufficient to warrant summary judgment as entered by the trial court. The power of attorney contention involves a question of fact immaterial to the entry of summary judgment. *Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 236, 456 N.E.2d 348, 351.

## III

■■■ Although far from clearly stated, it seems the gist of defendant's third argument is that compensatory damages were not established for counts I and II, and therefore there was no basis for a punitive damage award. We disagree. The breach of a fiduciary duty entitles the aggrieved party to recover all compensation the defendant received during the period of the breach, and such damages are considered compensatory. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 836-39, 413 N.E.2d 1299, 1314-16.) In the present case, evidence of defendant's breach of fiduciary duty during the period he represented plaintiff was presented to the jury, thereby providing a basis for compensatory damages. In addition, compensatory damages had already been awarded by the court under count III, thereby providing an alternative basis for the awarding of punitive damages.

Within this argument defendant argues punitive damages were not warranted. Whether an award of punitive damages is justified in a particular case is a question of law. (*J. I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 453, 516 N.E.2d 260, 263.) The amount awarded is within the province of the trier of fact and will not be disturbed unless the award is clearly excessive. (*Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 318, 487 N.E.2d 436, 439.) In our view, defendant's misconduct clearly warranted the imposition of punitive damages, and the amount awarded was not clearly excessive.

## IV

■■ Defendant's fourth argument contests the trial court's rulings denying portions of his motion *in limine* which sought to preclude certain matters from being presented to the jury. Within this argument, defendant contests every adverse ruling at trial relating to the denial of his motion *in limine*. Authority for defendant's many contentions, however, is scant. Indeed, defendant cites only two cases, one of which is a criminal case that sheds little light on the issues presented. The other case cited by defendant addresses only one portion of his argument. In view of the absence of any authority supporting defendant's remaining contentions within this argument, we confine our review to the contention supported by some authority. *Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814, 829, 521 N.E.2d 1282, 1292; 113 Ill. 2d R. 341(e)(7).

Defendant requested the jury not be apprised of his 1980 Federal conviction of fraud. Defendant had pleaded guilty to defrauding the

State Farm Insurance Company in a scheme involving forged drafts. The court ruled this evidence was admissible both substantively and for impeachment purposes. Defendant contends this ruling was erroneous, relying on *Brown v. Brown* (1978), 62 Ill. App. 3d 328, 379 N.E.2d 634. In *Brown*, the trial court excluded two complaints and a judgment order from a previous civil action brought against defendant. The issue presented was whether defendant's prior misconduct could be used to prove the fraud charged. The court correctly noted that other acts of fraud are only admissible in a civil action to prove the fraud charged if they demonstrate a *modus operandi* or if they are probative of knowledge or intent. In *Brown*, the court found there was no evidence the prior judgment was founded on fraud or that it evidenced a common plan or scheme or that it had any probative value on the question of intent or knowledge. (*Brown*, 62 Ill. App. 3d at 336-37, 379 N.E.2d at 640-41.) *Brown* is clearly distinguishable. In the present case, the prior misconduct consisted of a fraud conviction, and it was not offered to prove the fraud charged as that had already been determined by the court on summary judgment. The trial was held for purposes of assessing damages, both actual and punitive. Evidence of similar transactions and practices is relevant to a determination of punitive damages. (*Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 321, 457 N.E.2d 1335, 1340.) Therefore, we are not persuaded the trial court erred in admitting the defendant's prior fraud conviction.

## V

■ Defendant's fifth argument is similar to his fourth argument. Defendant starts with a general point—"The trial court erred in refusing to admit defendant's theory and in admitting plaintiff's prejudicial evidence"—and then proceeds, in a series of one-sentence paragraphs, to contest virtually every adverse evidentiary ruling made by the trial court. No authority other than a single Federal case addressing one particular ruling and a section of the Code of Professional Responsibility addressing another ruling is included in the argument. The Federal case is inapposite, and the section of the Code of Professional Responsibility lends no support to defendant's contentions. The remaining contentions are waived for failure to cite any supporting authority. *Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814, 829, 521 N.E.2d 1282, 1292; 113 Ill. 2d R. 341(e)(7).

## VI

■ Defendant's sixth argument follows the pattern of argu-

ments IV and V. The argument is entitled: "The trial court improperly instructed the jury." Thereafter, defendant argues every instruction ruling against him by the trial court was error. The instructions given by the trial court were patterned after the holding in *ABC Trans National* (90 Ill. App. 3d at 836-39, 413 N.E.2d at 1314-16). That case found appropriate a salary forfeiture for the period when the agent violated its fiduciary duty. The criterion for determining the adequacy of jury instructions is whether, taken as a whole and in series, they fairly, fully and comprehensively apprise the jury of the applicable legal principles. (*Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 317, 487 N.E.2d 436, 438.) We have reviewed the instructions, and they accurately set forth the pertinent law. Defendant's conclusory statements and the limited authority relied on fail to persuade us otherwise.

CROSS-APPEAL

A

■■ Plaintiff first argues the trial court erred in granting defendant's motion for summary judgment on count IV, which sought relief under the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). The gist of plaintiff's argument is that claims concerning the entreprenurial aspects of a legal practice fall within the category of consumer actions contemplated by the Act. In support plaintiff places primary reliance on *Short v. Demopolis* (1984), 103 Wash. 2d 52, 691 P.2d 163. Defendant, relying on the dissenting opinion in *Short*, contends the Act should not apply to the practice of law because it intrudes upon the judiciary's exclusive jurisdiction to regulate the practice. (*Short*, 103 Wash. 2d at 72-79, 691 P.2d at 174-77 (Roselli, J., dissenting).) Alternatively, defendant contends *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007, is controlling. Finally, defendant relies on two cases for his assertion the Act does not apply to a purely private wrong. *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 474 N.E.2d 711; *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 438 N.E.2d 1247.

We agree with the trial court that *Frahm* provides guidance in resolving this question. In *Frahm*, the defendant represented plaintiffs in the purchase and development of certain real estate. As a result of defendant's actions and misrepresentations, plaintiffs lost their entire investment in the project. In the course of its opinion affirming the dismissal of plaintiffs' claim based on the Act, the court stated:

"We do not believe, however, that even the most liberal statutory interpretation indicates the application of this consumer protection statute to the conduct of an attorney engaged in the actual practice of law and, accordingly, we find that plaintiffs do not fall within the class of 'consumers' which the statute was designed to protect." (*Frahm*, 113 Ill. App. 3d at 582, 447 N.E.2d at 1009.)

In addition, the court also commented:

"The interpretation urged by plaintiffs here, however, would necessarily equate the practice of law with an ordinary commercial enterprise, a proposition for which we find no support in case law or public policy." (*Frahm*, 113 Ill. App. 3d at 584, 447 N.E.2d at 1010.)

The court further concluded: "[T]he legislature's use of 'trade or commerce' in defining the application of the Act was not meant to include the actual practice of law." (*Frahm*, 113 Ill. App. 3d at 585, 447 N.E.2d at 1011.) Recently, in *Guess v. Brophy* (1987), 164 Ill. App. 3d 75, 79, 517 N.E.2d 693, 696, the court expressed agreement with *Frahm* that the Act does not concern the furnishing of legal services by the legal profession.

Based on this case law and our interpretation of the Act, we conclude the misconduct perpetrated by defendant in his capacity as an attorney representing plaintiff does not fall within the ambit of the Act. Having so concluded, we need not address defendant's separation of powers argument or his argument concerning the application of the Act to purely private wrongs.

## B

■■■ Plaintiff next argues the entire contingent fee should have been forfeited. Plaintiff maintains the trial court erred as a matter of law in permitting the jury to apportion forfeiture of the fee because a contingent fee cannot be apportioned. Accordingly, since defendant breached his fiduciary duty during the course of representing plaintiff, defendant forfeited his right to compensation. Defendant, relying on *Monotronics Corp. v. Baylor* (1982), 107 Ill. App. 3d 14, 436 N.E.2d 1062, contends the court correctly left to the jury the question of complete or partial forfeiture of the fee. He asserts it would be unconscionable to require a forfeiture of the entire contingent fee.

Both parties rely on a line of cases involving an employee's breach of fiduciary duty to his employer. The seminal case is *ABC Trans National* (90 Ill. App. 3d 817, 413 N.E.2d 1299). The issue was what portion of the employees' salaries should be subject to forfeiture. Relying

on section 456 of the Restatement (Second) of Agency and long-standing Illinois law on agency, the court fashioned the following rules which were summarized in *R. K. Ray Sales, Inc. v. Genova, Inc.* (1985), 133 Ill. App. 3d 98, 103, 478 N.E.2d 616, 619, as follows:

"(1) an agent is entitled to payment only for work properly performed, (2) where the work of an agent is done during a period of wilful or deliberate breach, the agent is not entitled to compensation for the work, and (3) where the work of an agent is done partly during the time of such a breach and partly while the agent is in conformity to his duty to his principal, the agent cannot recover if the compensation cannot be apportioned between the two periods."

In *ABC Trans National*, the court ruled the employees forfeited their full salaries during the period of the breach.

An exception to the full forfeiture rule during the period of breach was adopted in *Monotronics Corp. v. Baylor* (1982), 107 Ill. App. 3d 14, 436 N.E.2d 1062, wherein the court determined full forfeiture was inappropriate because the employee continued to work diligently for the employer during the period he was setting up a competing business; there was evidence tending to show the employer had acquiesced in the employee's competitive activity; and, most importantly, the employer benefited substantially from the employee's performance of his duties during the period of the breach. *Monotronics*, 107 Ill. App. 3d at 19, 436 N.E.2d at 1066.

■■■ The determinative question is whether a contingent fee can be apportioned. In the present case, the breach of fiduciary duty arose after judgment had been entered in the underlying suit. The bulk of defendant's work on behalf of plaintiff had been completed. Under these circumstances, we do not believe defendant should have to forfeit the entire fee. We are not persuaded that because apportionment of a contingent fee is not as easily accomplished as apportioning fees earned on an hourly basis, the entire contingent fee should be forfeited. Rather, we agree with the trial court that the jury was capable of apportioning the contingent fee. The judgment entered by the jury bears out this conclusion. We therefore reject plaintiff's second argument on cross-appeal.

C

Plaintiff's final argument addresses the propriety of the damages entered against American and the Railroad. In counts VI, VII, and VIII of his second amended complaint, plaintiff alleged American, Continental, and the Railroad had converted the check by paying it on

a forged endorsement and sought as damages the face value of the check. Plaintiff's claim was brought pursuant to section 3—419 of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1987, ch. 26, par. 3—419). Plaintiff maintains the trial court erred in two ways: (1) it should have awarded the face amount of the converted check as the measure of damages; and (2) it should not have granted credits or set-offs between the parties subject to liability. American and the Railroad contend the trial court's rulings on these matters were proper.

The claims against American, Continental, and the Railroad were resolved on summary judgment. Although transcripts of the hearings on the summary judgment motions are not included in the record on appeal, the orders entered confirm the trial court granted plaintiff summary judgment against American (the depositary bank) and the Railroad (drawer and drawee) in the amount of $2,000 plus interest. The court granted Continental (collecting bank) summary judgment against plaintiff. In its final order, the court ordered that plaintiff was entitled to only one recovery of the $2,000 plus interest judgment and provided for credits or setoffs among the liable parties.

Plaintiff first contends the proper measure of damages was the face amount of the check. Section 3—419(2) of the Code provides:

> "In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument." (Ill. Rev. Stat. 1987, ch. 26, par. 3—419(2).)

Based on a literal reading of this provision, the Railroad, as drawee, is absolutely liable for the face amount of the check, and American, as the depositary bank, is presumed liable for the face amount of the check.

Addressing the liability of the Railroad/drawee first, we believe the Illinois Code Comment makes a valid point regarding section 3—419(2):

> "This subparagraph purports to establish an absolute liability of a drawee, in actions brought under subparagraph (1), for the face amount of the instrument. [Citation.] While this rule may work well in most cases, since the holder or payee will have normally received no payment on the obligation for which the instrument was issued, the rule will not work well in possible, although relatively rare, situations in which the holder or payee has received partial payment on such obligation. As to such situations, this rule has the effect of an irrebuttable presumption. Statutes creating such presumptions have found disapproval

under the due process clauses of the Fifth and Fourteenth Amendments. [Citations.]

Under pre-Code Illinois decisional law a rebuttable presumption existed against all parties that the amount of damages suffered equaled the face amount of the instrument: [citations]." (Ill. Ann. Stat., ch. 26, par. 3—419(2), Illinois Code Comment, at 67 (Smith-Hurd Supp. 1988).)

The only Illinois case on point is *Smith v. General Casualty Co.* (1979), 75 Ill. App. 3d 971, 394 N.E.2d 804. In *Smith,* the court upheld a damage award for the full amount of the instrument ($7,000) against the drawee despite plaintiff's recovery of $2,500 from a client security fund. The court opined the monies obtained from the fund were a collateral source that would not relieve the drawee of full liability. *Smith,* 75 Ill. App. 3d at 974, 394 N.E.2d at 807.

■■■ We agree with the trial court that the circumstances of the present case fall within one of the rare situations alluded to by the drafters of the Illinois Code Comment. Here, plaintiff eventually recovered from defendant the monies due him from the Railroad. Unlike *Smith,* the recovery of the monies due was not from a collateral source. The check also included the attorney fees owed by plaintiff to defendant. Of that sum (roughly $22,000), the jury determined that $2,000 should be forfeited by defendant on account of his breach of fiduciary duty. Thus, $2,000 represents the amount plaintiff was entitled to as a result of the conversion of the check. To award plaintiff damages in the full amount of the check would result in an unwarranted windfall. Therefore, we decline to follow strictly section 3—419(2) as it pertains to a drawee's liability and agree with the trial court's determination that the Railroad should not be held liable for the full amount of the check.

■■■ Regarding the extent of American's liability, the section 3—419(2) presumption of full liability for the amount of the instrument is rebutted by the same reasons mentioned in the preceding paragraph. Uniform Commercial Code Comment 4 provides that evidence is admissible in favor of the depositary bank to show that the obligation is in fact worth less, or even is without value. (Ill. Ann. Stat., ch. 26, par. 3—419(2), Uniform Commercial Code Comment 4, at 329 (Smith-Hurd 1963).) Since there was evidence showing that the only obligation remaining on the note was $2,000, the trial court correctly awarded plaintiff damages in such amount.

Plaintiff also contends the following portion of the trial court's final order was error:

"5. IT IS FURTHER ORDERED that the Court intends there

to be but one (1) satisfaction to the Plaintiff, LURZ, of the '$2000 plus interest Judgment' described in Paragraph 3 and accordingly, should LURZ collect those damages from PANEK, LURZ shall not recover on the summary judgments granted to LURZ against AMERICAN NATIONAL BANK and Chicago, Milwaukee Railroad (CMC) and correspondingly, should LURZ receive satisfaction of its Judgment against AMERICAN NATIONAL BANK and Chicago, Milwaukee Railroad (CMC), he shall accordingly afford PANEK a credit or set-off as against the original judgment to the extent of any payments received from AMERICAN NATIONAL BANK and/or Chicago, Milwaukee Railroad (CMC)."

Plaintiff contends the credits or setoffs were inappropriate because each party should be liable for its own conversion. Plaintiff maintains the court effectively granted contribution among nonjoint tortfeasors because American and the Railroad were guilty of statutory conversion, and defendant was guilty of common law conversion, fraud, and breach of fiduciary duty.

The arguments of defendant, American, and the Railroad in response are persuasive. Without the credits or setoffs, plaintiff could obtain multiple recoveries for the same injury, thereby creating a windfall. The detriment suffered by plaintiff was the absence of possession of monies owed. One recovery for this injury is proper. The setoff clause fashioned by the trial judge accomplishes that objective.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS and REINHARD, JJ., concur.