(No. 84117.—

ROBERTA L. CRIPE, Guardian of the Adult and Conservator of the Estate of Roberta A. Schmitz, Appellee, v. THOMAS E. LEITER *et al.*, Appellants.

*Opinion filed October 22, 1998.—Rehearing denied November 30, 1998.*

HEIPLE, J., took no part.
HARRISON, J., dissenting.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, Craig L. Unrath, David R. Sinn and J. Kevin Wolfe, of counsel), for appellants.

Heiple Law Offices, of Peoria (Bradley S. McMillan, of counsel), for appellee.

Peter A. Monahan, Anne M. Oldenburg and Thomas S. Reed, of Alholm, Monahan, Keefe & Klauke, L.L.C., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Todd A. Smith, Dennis A. Rendleman, Athena T.

Taite and Stephanie K. Hughes, of Springfield, for *amicus curiae* Illinois State Bar Association.

Michael A. Fleming, of Cusack, Fleming, Gilfillan & O'Day, of Peoria (James C. Turner and Edward J. Tannouse, of Washington, D.C., of counsel), for *amicus curiae* HALT, Inc.

Kathleen L. Roach and Jennifer L. Sachs, of Chicago, for *amicus curiae* Chicago Council of Lawyers.

Robert E. Senechalle, Jr., of Forest Park, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE BILANDIC delivered the opinion of the court:

The question presented in this appeal is whether a client may state a cause of action against an attorney under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 *et seq.* (West 1992)) based upon alleged overbilling by the attorney. The plaintiff, Roberta L. Cripe, filed an action in the circuit court of Peoria County against the defendants, Thomas Leiter and The Leiter Group, charging the defendants with, *inter alia,* violations of the Consumer Fraud Act. The circuit court dismissed the Consumer Fraud Act counts. The appellate court reversed. 291 Ill. App. 3d 161. We hold that the Consumer Fraud Act is not applicable to the plaintiff's claim that the defendants charged excessive fees for legal services. We therefore reverse the appellate court and affirm the circuit court's dismissal of the plaintiff's Consumer Fraud Act counts.

## FACTS

The plaintiff's complaint alleges the following. August H. Schmitz, the husband of Roberta Schmitz,

died on January 6, 1992, leaving two irrevocable trusts valued at approximately $583,000. Mrs. Schmitz was the sole beneficiary of the trusts and the First National Bank of Peoria was named as trustee. On February 12, 1992, Mrs. Schmitz discharged the attorney who had been their family attorney and who had drafted the trusts. Thereafter, attorney Thomas E. Leiter of The Leiter Group began representing Mrs. Schmitz in an attempt to transfer the trusts from First National Bank to South Side Trust and Savings Bank of Peoria (South Side Bank). On or about April 27, 1992, South Side Bank was appointed as successor trustee of the trusts. South Side Bank subsequently appointed attorney Leiter as the attorney for the trusts.

On March 12, 1992, the plaintiff, Mrs. Schmitz's daughter and present guardian, filed a petition for appointment of guardian for disabled person in Tazewell County probate court, alleging that Mrs. Schmitz lacked sufficient capacity to make responsible decisions about her own care and the management of her estate. Mrs. Schmitz retained Leiter to defend her in the Tazewell County guardianship proceeding. This guardianship petition was ultimately dismissed on Mrs. Schmitz's motion.

In December 1992, Mrs. Schmitz moved to Michigan and began living with the plaintiff. On March 22, 1993, the probate court of Midland County, Michigan, found Mrs. Schmitz to be legally incapacitated based upon the report of a physician that her condition was consistent with a progressive dementing illness such as Alzheimer's disease. A public guardian was appointed as Mrs. Schmitz's guardian and conservator. The plaintiff was subsequently appointed as successor guardian of Mrs. Schmitz by the Michigan probate court.

The plaintiff, in her capacity as Mrs. Schmitz's guardian, filed this action against Thomas Leiter and The Leiter Group in the circuit court of Peoria County on

October 24, 1994. The complaint alleged that, between February 12, 1992, and June 1, 1994, South Side Bank paid $65,933.50 out of the Schmitz trusts to the defendants as fees for legal services. The complaint charged that the defendants' fees for legal services were "outrageously excessive and unreasonable and bear no relationship to the actual time spent by Attorney Leiter in allegedly representing Mrs. Schmitz as her personal attorney and as her trust attorney." As ultimately amended, the plaintiff's complaint charged the defendants with: (1) violation of the Consumer Fraud Act; (2) common law fraud; (3) breach of fiduciary duty; (4) legal malpractice; and (5) constructive fraud. Each of the counts was premised on the allegation that the defendants charged excessive and unreasonable legal fees. The complaint alleged that the defendants' overbilling caused the Schmitz trust accounts to be depleted in excess of $40,000 in order to pay the defendants' excessive legal fees.

Only counts I and VI, the Consumer Fraud Act counts, are at issue in this appeal. Count I alleged that attorney Leiter charged excessive and unreasonable fees that bore no relationship to the actual time spent by Leiter in representing Mrs. Schmitz, and listed numerous examples of allegedly excessive charges. Count I alleged that Leiter owed Mrs. Schmitz a fiduciary duty both as her personal attorney and as the attorney for the trusts. As a result of that duty, Leiter was required to charge Mrs. Schmitz "reasonable attorney's fees representing the actual time, effort, and skill required to serve as legal counsel for the Schmitz trust accounts." Count I charged that Leiter engaged in the deceptive business practice of mailing out monthly invoices which contained outrageously excessive charges for the legal services performed by Leiter and which represented charges for time not spent by Leiter in representing Mrs. Schmitz. In addition to compensatory damages, count I sought

recovery of attorney fees and punitive damages. Count VI reiterated the allegations of count I against The Leiter Group, the law firm in which Leiter was a partner.

The defendants moved to dismiss the plaintiff's complaint. The circuit court granted the motion to dismiss the Consumer Fraud Act count against each defendant, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), on the ground that the Act does not apply to legal services or the billing of those services. The plaintiff's counts alleging fraud, constructive fraud, legal malpractice and breach of fiduciary duty against each defendant remain pending in the circuit court.

The plaintiff appealed the dismissal of the Consumer Fraud Act counts to the appellate court. The appellate court determined that the Consumer Fraud Act, although not applicable to the actual practice of law, is nonetheless applicable to the "commercial aspects" of a law practice, which include billing for legal services. The appellate court therefore reversed the dismissal of the plaintiff's Consumer Fraud Act counts. 291 Ill. App. 3d 161. We allowed the defendants' petition for leave to appeal. 166 Ill. 2d R. 315.

## ANALYSIS

The defendants contend that the appellate court erred in reversing the dismissal of the plaintiff's Consumer Fraud Act claims. They assert that the Act does not apply to claims arising out of the provision of legal services and that billing is a part of the provision of legal services. The plaintiff argues, on the other hand, that only claims arising out of the "actual practice of law" are exempt from the Act. She asserts that the appellate court correctly held that billing for legal services falls within the "business" aspect of the legal profession and is therefore subject to application of the Act.

The Consumer Fraud Act is a regulatory and reme-

dial statute intended to protect consumers, borrowers and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 288 (1981). The Act is to be liberally construed to effectuate its purpose. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 503 (1996). Section 2 of the Act declares unlawful the following conduct:

> "Unfair *** or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce ***." 815 ILCS 505/2 (West 1992).

Section 10a(a) of the Act provides that "[a]ny person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 1992). The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Connick*, 174 Ill. 2d at 501. The plaintiff need not establish any intent to deceive on the part of the defendant because even an innocent misrepresentation may be actionable under the Act. *Smith v. Prime Cable*, 276 Ill. App. 3d 843, 856 (1995). The Act allows for the imposition of punitive damages and for the award of attorney fees to the prevailing party. 815 ILCS 505/10a(a), (c) (West 1992).

This court has not previously addressed the applicability of the Act to the legal profession. Our appellate court has considered this question in several cases. In *Frahm v. Urkovich*, 113 Ill. App. 3d 580 (1983), the plaintiffs brought a claim against their attorney under

the Consumer Fraud Act claiming that the attorney's misrepresentations caused them to lose their entire investment in a real estate deal. The circuit court dismissed the consumer fraud count for failure to state a cause of action and the appellate court affirmed. The appellate court reasoned that:

"In essence, plaintiffs seek a broad interpretation of the Act which would impose statutory liability for misconduct amounting to professional malpractice. We do not believe, however, that even the most liberal statutory interpretation indicates the application of this consumer protection statute to the conduct of an attorney engaged in the actual practice of law and, accordingly, we find that plaintiffs do not fall within the class of 'consumers' which the statute was designed to protect." *Frahm*, 113 Ill. App. 3d at 582.

*Frahm* was followed by the appellate court in *Lurz v. Panek*, 172 Ill. App. 3d 915 (1988). In *Lurz*, the defendant attorney represented the plaintiff in a personal injury action against a railroad. Following a verdict in the plaintiff's favor, the railroad delivered a check in satisfaction of the judgment to the defendant attorney. The defendant endorsed the check and deposited it into his client fund account. Over seven months later, the defendant issued a check to the plaintiff for the amount of the judgment less attorney fees and costs. The plaintiff filed an action against the defendant charging fraud, breach of fiduciary duty, conversion and violation of the Consumer Fraud Act. Summary judgment was awarded in favor of the defendant on the consumer fraud count. Judgment was entered in favor of the plaintiff on the remaining counts and he was awarded compensatory and punitive damages. The plaintiff appealed the award of summary judgment in favor of the defendant on the consumer fraud count. The appellate court affirmed. Following *Frahm*, the court held that the Consumer Fraud Act does not apply to claims arising out of the furnishing of legal services by the legal profession. The court concluded that "the misconduct perpetrated by defendant in his capacity as an attorney

representing plaintiff does not fall within the ambit of the Act." *Lurz*, 172 Ill. App. 3d at 926.

The issue was also discussed in *Guess v. Brophy*, 164 Ill. App. 3d 75 (1987). That court agreed with *Frahm* that "the legislature did not intend to include the furnishing of legal services to clients within the [Consumer Fraud] Act." *Guess*, 164 Ill. App. 3d at 79. The *Guess* court reasoned that the legal profession is subject to "a policing more stringent than that to which purveyors of most commercial services are subject." *Guess*, 164 Ill. App. 3d at 79. The court ultimately concluded, however, that the defendants in that case were not entitled to the same immunity from the Act afforded the legal profession because they were not acting in the capacity of lawyers representing clients.

Courts in several other states have addressed the applicability of consumer protection statutes to the legal profession, with differing results. In *Rousseau v. Eshleman*, 128 N.H. 564, 519 A.2d 243 (1986), the Supreme Court of New Hampshire held that the practice of law was exempt from New Hampshire's consumer protection statute, finding applicable an exemption for "trade or commerce otherwise permitted under laws as administered by any regulatory board." The court found that the supreme court's professional conduct committee qualified as a regulatory board within the meaning of that exemption. The *Rousseau* court concluded that, in view of the practical problems that might result, it was "reluctant" to interpret the statute as applying to the legal profession absent a "clearly expressed legislative intent." *Rousseau*, 128 N.H. at 567, 519 A.2d at 245. The New Jersey appellate court also concluded that attorneys' services were not covered by a consumer fraud statute in *Vort v. Hollander*, 257 N.J. Super. 56, 607 A.2d 1339 (1992). That court noted that the practice of law in the State of New Jersey is regulated, "in the first instance, if

not exclusively," by the New Jersey Supreme Court. The court reasoned that, "[h]ad the Legislature intended to enter the area of attorney regulation it surely would have stated with specificity that attorneys were covered under the Consumer Fraud Act." *Vort*, 257 N.J. Super. at 62, 607 A.2d at 1342. Significantly, in a later case addressing an analogous issue, the New Jersey court relied on Illinois decisions, noting that the Illinois Consumer Fraud Act was "very similar" to New Jersey's. *Hampton Hospital v. Bresan*, 288 N.J. Super. 372, 383, 672 A.2d 725, 730 (1996) (addressing the application of the consumer fraud statute to hospital services).

Courts in other states have reached a contrary conclusion. In *Short v. Demopolis*, 103 Wash. 2d 52, 691 P.2d 163 (1984), the Washington Supreme Court held that the Washington consumer protection statute applied to "certain entrepreneurial aspects of the practice of law," including "how the price of legal services is determined, billed and collected." *Short*, 103 Wash. 2d at 61, 691 P.2d at 168. The court reasoned that "[t]hese business aspects of the legal profession are legitimate concerns of the public which are properly subject to the [Washington Consumer Protection Act]." *Short*, 103 Wash. 2d at 61, 691 P.2d at 168. The *Short* court also held, however, that claims arising out of the "actual practice of law," as opposed to the entrepreneurial aspects of the profession, are exempt from the Act. *Short*, 103 Wash. 2d at 61, 691 P.2d at 168. The Supreme Court of Connecticut has also determined that lawyers are not entitled to a blanket exemption from consumer protection legislation. In *Heslin v. Connecticut Law Clinic*, 190 Conn. 510, 520, 461 A.2d 938, 943 (1983), the court held that the Connecticut Unfair Trade Practices Act's regulation of "trade or commerce" did not "totally exclude all conduct of the profession of law." The court also stated, however, that it need not decide in that case whether the

Act permitted regulation of "every aspect of the practice of law." *Heslin*, 190 Conn. at 520, 461 A.2d at 943.

Our Consumer Fraud Act, like those discussed in the preceding cases from other jurisdictions, contains no language expressly excluding or including the legal profession within its ambit. Despite the absence of such language, there appears to be little dispute among the decisions addressing this issue that consumer protection statutes do not apply to claims arising out of the "actual practice of law." The plaintiff in this case concedes that the Act does not apply to such claims. We are called upon here to decide whether an attorney's billing for legal services is included within that exemption. The plaintiff urges us to hold that billing is a part of the "business" aspect of the practice of law, entirely separate from the "actual practice of law." Therefore, the plaintiff argues, attorneys' billing practices should be regulated by the Act. The defendants argue, to the contrary, that billing is a part of the provision of legal services to which the Act was not intended to apply. We find no indication that the legislature intended the Consumer Fraud Act to apply to regulate attorneys' billing practices.

Historically, the regulation of attorney conduct in this state has been the prerogative of this court. See *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 494 (1988) (stating that this court has the inherent and exclusive authority to prescribe rules governing attorney conduct and to discipline attorneys for violating those rules); *In re Mitan*, 119 Ill. 2d 229, 246 (1987); *In re Teitelbaum*, 13 Ill. 2d 586, 593 (1958). In the exercise of this power, this court administers a comprehensive regulatory scheme governing attorney conduct. The Illinois Rules of Professional Conduct adopted by this court set forth numerous requirements to which attorneys in this state must adhere. 134 Ill. 2d Rs. 1.1 through 8.5. Violation of these rules is grounds for discipline. This court has appointed an At-

torney Registration and Disciplinary Commission (ARDC) to supervise the "registration of, and disciplinary proceedings affecting, members of the Illinois bar." 134 Ill. 2d R. 751. This court has also created a procedural scheme under which the ARDC operates, providing detailed regulations involving inquiry, hearing and review boards. 166 Ill. 2d R. 753. The purpose of this regulatory scheme is to protect the public and maintain the integrity of the legal profession. See *In re Towles*, 98 Ill. 2d 179 (1983).

This court's regulatory scheme extends to the area of attorneys' fees. Rule 1.5 of the Rules of Professional Conduct specifically addresses the subject, providing, in pertinent part:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent." 134 Ill. 2d R. 1.5(a).

Rule 1.5 also addresses the attorney's obligation to communicate to the client the basis or rate of the fee. 134 Ill. 2d R. 1.5(b). Further, Rule 1.5 sets forth guidelines for contingent fee arrangements and the division of fees among attorneys. 134 Ill. 2d Rs. 1.5(c) through (j).

An attorney who charges or collects an excessive fee in violation of this court's rules may be subjected to discipline. See, *e.g., In re Gerard*, 132 Ill. 2d 507 (1989) (attorney suspended for one year for charging excessive legal fees to client); *In re Kutner*, 78 Ill. 2d 157 (1979) (attorney censured for charging excessive legal fees to client). This court has also ordered an attorney to make restitution to a client who was charged excessive legal fees. See *In re Holz*, 125 Ill. 2d 546 (1988). The Rules of Professional Conduct further provide for discipline of an attorney who engages in conduct involving fraud, dishonesty, deceit or misrepresentation. 134 Ill. 2d R. 8.4. In addition, this court has created a client protection program operating under the auspices of the ARDC to reimburse losses caused by the dishonest conduct of attorneys in the course of the attorney-client relationship. 155 Ill. 2d R. 780.

Accordingly, the attorney-client relationship in this state, unlike the ordinary merchant-consumer relationship, is already subject to extensive regulation by this court. The legislature did not, in the language of the Consumer Fraud Act, specify that it intended the Act's provisions to apply to the conduct of attorneys in relation to their clients. Given this court's role in that arena, we find that, had the legislature intended the Act to apply in this manner, it would have stated that intention with specificity. See *Vort*, 257 N.J. Super. at 62, 607 A.2d at 1342. Absent a clear indication by the legislature, we will not conclude that the legislature intended to regulate attorney-client relationships through the Consumer Fraud Act.

We note that, prior to the decision in this case, our appellate court had, since 1983, consistently held the Act to be inapplicable to claims arising out of the attorney-client relationship. See *Frahm v. Urkovich*, 113 Ill. App. 3d 580 (1983); *Guess v. Brophy*, 164 Ill. App. 3d 75 (1987); *Lurz v. Panek*, 172 Ill. App. 3d 915 (1988). The legislature is presumed to be aware of judicial decisions interpreting

legislation. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 218 (1983). The Consumer Fraud Act has been amended numerous times since the decisions in *Frahm, Guess,* and *Lurz.* The legislature has not, however, included language in the Act to specify that it applies to the conduct of attorneys in relation to their clients. In amending a statute, " ' "the legislature is presumed to know the construction the statute has been given and, by re-enactment, is assumed to have intended for the new statute to have the same effect." ' [Citations.]" *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 554 (1992). The legislature's failure to alter the Act in response to these appellate court holdings provides further support for our conclusion that the legislature did not intend the Act to apply to claims arising out of the attorney-client relationship.

The plaintiff nonetheless argues that an attorney's billing is simply a "business" aspect of the practice of law and is therefore within the intended scope of the Consumer Fraud Act. As discussed above, however, the comprehensive regulatory scheme administered by this court extends to attorney fees. Moreover, an attorney's billing for legal services cannot be separated from the attorney-client relationship. Unlike ordinary merchant-consumer relationships, the relationship between attorney and client is fiduciary in nature. *In re Gerard*, 132 Ill. 2d 507, 529 (1989). Although an attorney's fees in a particular case will generally be governed by the contractual arrangement between the attorney and the client, the attorney's fiduciary position prohibits the attorney from charging an excessive fee. See *People v. Kinion*, 97 Ill. 2d 322, 332 (1983); *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 118 (1990). Fraudulent or excessive billing of a client violates the attorney's fiduciary duty to the client. Thus, an attorney's billing of a client is not simply a "business" aspect of the practice of law, but is tied to

the attorney's fiduciary obligation to the client. Because of that fiduciary relationship, the attorney's fees are subject to scrutiny and regulation not applicable to the fees for most commercial services. The Consumer Fraud Act therefore was not intended to apply to an attorney's billing of a client for legal services.

Accordingly, we conclude that the legislature did not intend the Consumer Fraud Act to apply to regulate the conduct of attorneys in representing clients. We hold that, where allegations of misconduct arise from a defendant's conduct in his or her capacity as an attorney representing a client, the Consumer Fraud Act does not apply. An attorney's billing of a client for legal services is a part of the attorney's representation of the client and is therefore exempt from the Act. The circuit court properly dismissed the plaintiff's Consumer Fraud Act counts against the defendants in this case.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court which reversed the circuit court's dismissal of counts I and VI of the plaintiff's second-amended complaint. The circuit court's dismissal of counts I and VI is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.

JUSTICE HARRISON, dissenting:

The majority engages in a protracted discussion of the legislative intent behind the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 1992)). It is axiomatic, however, that the best indication of the legislature's intent is the language it employed in drafting the law. *People v. Fitzpatrick*, 158 Ill. 2d 360, 364 (1994). Where

the language of a statute is clear and unambiguous, the court should not resort to other tools of statutory interpretation. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). The court's only legitimate function is to enforce the law as written. *People v. Rissley*, 165 Ill. 2d 364, 391 (1995).

Section 2 of the Consumer Fraud Act declares unlawful

"[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact \*\*\* in the conduct of any trade or commerce \*\*\*." 815 ILCS 505/2 (West 1992).

The terms "trade" and "commerce" are defined by the law to mean

"the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f) (West 1992).

Pursuant to section 10a(a) of the Act,

"[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 1992).

The term "person"

"includes any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof[.]" 815 ILCS 505/1(c) (West 1992).

These provisions, which must be liberally construed to effect the Act's purposes (815 ILCS 505/11a (West 1992)), clearly and unambiguously embrace the sort of

billing fraud claims advanced in counts I and IV of plaintiff's complaint. Accordingly, defendants cannot be removed from the Act's coverage without holding that the legislature did not mean what the plain language of the statute says. No rule of construction authorizes us to do that. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994).

Had the General Assembly intended to exclude attorneys from the scope of the Act, it could easily have done so, just as it excluded real estate salesmen and brokers, newspaper and periodical publishers, and individuals associated with television and radio stations. 815 ILCS 505/10b (West 1992). Attorneys, however, are nowhere mentioned. It is a basic rule of statutory construction that the expression of certain exceptions in a statute should be construed as an exclusion of all others. *State of Illinois v. Mikusch*, 138 Ill. 2d 242, 250 (1990). Courts are not at liberty to depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997). Accordingly, the absence of attorneys from the detailed exclusions enumerated in the statute is fatal to the majority's analysis.

Holding attorneys to the same standards of honesty and fair dealing that apply to other business people will inevitably affect the practice of law. In my view, the results can only be positive. Unlike my colleagues, I am not concerned about encroachment on this court's authority. While it is true that responsibility for regulating the legal profession and disciplining attorneys is vested in our court, the General Assembly has made specific provision in the Consumer Fraud Act to avoid separation of power problems. Section 10b(1) of the Act exempts from coverage "[a]ctions or transactions specifi-

cally authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1992). Accordingly, if an attorney's conduct were permissible under the rules we have enacted and the standards we have set, it would not be actionable under the Consumer Fraud Act.

The conduct alleged in this case, if proven, would not be permissible under the rules of our court. Although the attorneys involved might ultimately be subject to discipline, that is no reason to deny plaintiff her right to bring a statutory damage action against them. If what the attorneys did constituted a crime, we would surely not say that they are exempt from prosecution merely because they are subject to disbarment by us. The same principle applies here.

For the foregoing reasons, counts I and IV of plaintiff's complaint should not have been dismissed, and the judgment of the appellate court should be affirmed. I therefore dissent.